MAXEY, District Judge,
after stating the case, delivered the opinion of the court.
Before entering upon a discussion of the merits of the case, it becomes necessary to dispose of a preliminary question suggested by the appellee. It is objected by counsel for appellee that the demurrer interposed by appellants to the bill was irregularly filed and heard, because it was unaccompanied by the usual certificate of counsel and affidavit of the defendants, and for the additional reason that it was filed on the eve of the final hearing of the cause, and long after the filing of the answer. By equity rule 31, it is provided that:
“No demurrer or plea shall be allowed to be filed to any bill, unless upon a certificate of counsel that in his opinion it is well founded in point of law, and supported by the affidavit of defendant that it is not interposed for delay; and if a plea, that it is true in point of fact.”
Construing the rule quoted, it is said by the supreme court:
“Inasmuch as the so-called demurrer was fatally defective, in lacking the affidavit of defendant and certificate of counsel required by rule 31, there was no error in disregarding it and entering a decree pro confesso.” Furnace Co. v. Witherow, 149 U. S. 576, 13 Sup. Ct. 937; National Bank v. Insurance Co., 104 U. S. 76; Preston v. Finley, 72 Fed. 850; Taylor v. Brown (Fla.) 13 South. 957.
Referring to the foregoing statement of the case, it will be observed that the demurrer was accompanied by an affidavit of one of the counsel for the appellants to the effect that the demurrer was not interposed for delay. Whether such an affidavit made by counsel in the cause would be the equivalent to the usual certificate by counsel and affidavit of the defendant, need not be determined, as we are satisfied that the appellee is not in a position to avail itself of the irregularities suggested. When a demurrer is irregularly filed, it may be wholly disregarded, or taken from the files, upon motion of the plaintiff. Ewing v. Blight, 3 Wall. Jr. 134, Fed. Cas. No. 4,589; Taylor v. Brown, supra; Keen v. Jordan, 13 Fla. 327; 1 Beach, Mod. Eq. Prac. § 323. In this case the appellee neither disregarded the demurrer, nor moved to strike it from the files. On the contrary, the demurrer came on for hearing, was argued by counsel, and, as shown by the decree, overruled by the court. Objection is here made—for the first time, so far as the record discloses—to the irregularities complained of. That the appellee is too late in urging its objections seems to be well settled. *14 Upon this point, Mr. Chief Justice Randall, speaking for the court in Keen v. Jordan, 13 Fla. 332, 333, says:
“The appellee, however, suggests in his brief that the demurrer was properly-overruled, because it was not accompanied by the certificate of counsel that in his opinion it is well founded in law, as required by the thirty-first rule of chancery practice. This objection of appellee relates to an irregularity of which he should have taken advantage by motion to strike off the demurrer. Upon an appeal, parties cannot take advantage of any irregularity which they have either consented to or waived. 1 Barb. Oh. Prac. 396. Here the parties proceeded to argument and judgment upon the demurrer, thus waiving this irregularity. The demurrer was overruled by the court,—not struck off or disregarded. Where a defendant is guilty of an irregularity in filing a demurrer, the plaintiff may, on application, obtain an order to take the demurrer off the files, but not that the demurrer be overruled. 1 Daniell, Ch. Prac. 617, 618.”
See Goodyear v. Toby, 6 Blatchf. 130, Fed. Cas. No. 5,585; Clements v. Moore, 6 Wall. 310; Hayes v. Dayton, 18 Blatchf. 425, 8 Fed. 702.
The appellee having waived the right to object to the consideration of the demurrer, the contention urged by counsel in its behalf must be held to be untenable. We will therefore proceed to consider such of the questions raised by the demurrer, and insisted upon in the specifications of error, as require decision. Appellants assign, among others, the following grounds of error:
“The court erred in overruling the defendants’ demurrer, and in rendering the decree in favor of complainant and against these defendants, and in not dismissing the complainant’s bill, for this: (1) That the whole basis of this suit was an alleged mutual mistake, but the allegations in the bill do not show any facts constituting a mistake, nor does it allege such mistake as could be relieved against by the court, or could be made the basis of the decree rendered herein, canceling in part the contract as signed and executed by the parties to it. (2) The allegations of the bill do not show that the contract sought to be changed and corrected was a legal or binding obligation of the county of Brazoria, for this: That, under the constitution and laws of the state of Texas, the county of Brazoria could not make a legal or binding contract to issue its bonds, as provided in said contract, without, at the time when the debt was created, levying a tax to pay the interest and sinking fund on the same; and it does not appear by said bill that any tax was levied when said debt was created or contract made, or at any time, and the evidence shows that no tax was levied for that purpose.”
As to tbe first specification, we do not deem it necessary to determine whether the bill is demurrable for the cause assigned; for, although the bill may be admitted to be sufficient, still it is appar-' ent that the proof does not support the allegations. The gravamen of the complaint is that the liquidated damage clause of the contract was the result of accident and mutual mistake of the parties. But there is no testimony showing or tending to show the truth of such charge. On the contrary, the proof clearly shows that the clause was deliberately inserted in the contract, and that all the parties signed it with full knowledge of the existence of all its provisions. Gano v. Palo Pinto Co., 71 Tex. 102, 8 S. W. 634. It seems to have been the purpose of appellee to elicit from the county judge, and the two members of the commissioners’ court whose testimony was taken, their views touching the construction of the liquidated damage clause of the contract, and the motives which *15 actuated the parties in making it a part of the agreement. But the question of the construction of contracts is one for the courts, and a court of law is equally competent with a court of equity to perform that duty.
The second specification of error presents the real question in the case, and upon its solution the fate of the bill depends. Under this assignment it is contended, in effect, by appellants, that the contract in question is not valid and binding upon Brazoria county, because no provision was made at the time of its execution for levying and collecting a sufficient tax to pay the interest on the debt thus created, and to provide a sinking fund, as required by the constitution of the state. The bill alleges the execution of the contract, and the fact that, under the laws of Texas, Brazoria county had authority to provide for the construction of bridges. The allegations are specific as to the performance of the contract by the appellee, and the acceptance and use of the bridges by the county. Indeed, it may be generally said that the bill, in respect of the question now being considered, is amply sufficient, save and except in one respect: There is nothing in the bill to show affirmatively, nor anything stated from which it may be inferred, that Brazoria county has made provision for the debt created by the contract, by levying a tax to pay the interest and to provide a sinking fund. The idea that such provision was made by the county is negatived by the concluding prayer of the petition in the suit at law, as recited in the bill, by which the appellee prays for a mandamus to compel the levy of a tax to pay the interest on, and provide a sinking fund for, the debt created. The prayer is in the following words:
“That a writ of mandamus issue to the county judge and the said commissioners, ordering and compelling them, at the said next regular term of the commissioners’ court of Brazoria county, Texas, to pass an order, and duly enter the same on the minutes of said court, providing for the levy and collection of a tax sufficient to pay the interest and to create a sinking fund for the payment of said bonds, and providing by said order for the annual levy and creation of sufficient tax for said purpose.”
It may be further observed that the contract in this case does not provide for the payment of the bridges in money, but the provision is specific that they shall be paid for in the bonds of Brazoria county, running through a series of years. Questions, therefore, of ordinary municipal indebtedness and current expenses, payable in current funds, which are considered in some of the decisions, have no pertinency to the question here discussed. Since Brazoria county has failed to make provision for the payment of the debt created by the contract, by the levy of a tax to pay the interest and to provide a sinking fund, is the contract relied upon by the appellee valid and binding upon the county, as a contract for the issuance of bonds? Section 7, art. 11, of the constitution of the state of Texas, provides:
“But no debt for any purpose shall ever be incurred in any manner by any city or county, unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon, and to provide at least two per cent, as a sinking fund.”
*16 It is said by Mr. Justice Gaines, speaking for the court, in City of Terrell v. Dessaint, 71 Tex. 773, 9 S. W. 594, that:
“Tlie language Is general and unqualified, and we find nothing in the context to indicate that the framers of the constitution did not mean precisely what is said; that is, that no city should create any debt without providing by taxation for the payment of the sinking fund and interest.”
This question has been repeatedly before the courts of Texas, and the same construction has been invariably placed upon the constitutional provision. The language is so clear that it admits of but one interpretation. The provision means precisely what it says, and it cannot be evaded or set at naught to meet the supposed hardships of particular cases. Where the meaning of constitutional provisions is plain and obvious, it is the duty of courts to give effect to such meaning, without attaching to the words employed a forced construction, and one not intended by the framers of the instrument. The remarks of Mr. Justice Lamar, as the organ of the court, in Lake Co. v. Rollins, 130 U. S. 670, 9 Sup. Ct. 652, are apt and appropriate in this connection:
“We are unable,” says the justice, “to adopt the constructive interpolations ingeniously offered by counsel for the defendant in error. Why not assume that the framers of the constitution, and the people who voted it into existence, meant exactly what it says? At the first glance, its reading produces no impression of doubt as to the meaning. It seems all sufficiently plain, and in such cases there is a well-settled rule which we must observe. The object of construction, applied to a constitution, is to give effect to the intent of its framers, and of the people in adopting it. This intent is to be found in the instrument itself, and, when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument.”
That the contract' here sought to be reformed and enforced is an invalid obligation, and therefore not enforceable against Brazoria county, is conclusively shown by the following authorities: City of Terrell v. Dessaint, supra; Citizens’ Bank v. City of Terrell, 78 Tex. 450, 14 S. W. 1003; Biddle v. City of Terrell, 82 Tex. 335, 18 S. W. 691; McNeill v. City of Waco (Tex. Sup.) 33 S. W. 322; Noel v. City of San Antonio (Tex. Civ. App.) 33 S. W. 263; Kuhls v. City of Laredo (Tex. Civ. App.) 27 S. W. 791; Wade v. Travis Co., 72 Fed. 985; Berlin Iron Bridge Co. v. City of San Antonio, 62 Fed. 882. See, also, Millsaps v. City of Terrell, 8 C. C. A. 554, 60 Fed. 193, and Wiegel v. Pulaski Co. (Ark.) 32 S. W. 116.
But it is contended by counsel for the appellee, in his brief, that:
“Taking this entire transaction as one, as we must, the contract to build was only the initial step. It was a step towards the creation or incurring of a debt, but it was not incurred until the bridges were built and the bonds issued.”
This position of counsel seems to be satisfactorily answered by the supreme court of Texas in the case, before cited, of McNeill v. City of Waco, 33 S. W. 322. In that case, at page 324 of 33 S. W., Mr. Justice Denman says:
“By parity of reasoning, we think it follows that a contract entered into for the construction or erection of any public improvement authorized by law, but not properly a part of the ordinary expenses of the corporation, * * * would be the creation or incurring of a debt, within the meaning of the constitution. We conclude that the word ‘debt,’ as used in the constitutional *17 provisions above quoted, means any pecuniary obligation imposed by contract, except such as were, at ble date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the corporation.”
The contract entered into between the appellee and Brazoria county being void because, in the attempt to create the debt evidenced thereby, the express provisions of section 7, art. 11, of the constitution were ignored and violated, and there being no evidence in the record of accident or mutual mistake on the part of either of the parties in the execution of the contract, it cannot be seriously claimed that a court of equity has the power to reform the instrument, and infuse into it constitutional force and vigor. In Hedges v. Dixon Co., 150 U. S. 192, 14 Sup. Ct. 74, the principle is clearly stated by Mr. Justice Jackson, as the organ of the court, in the following language:
“Where a contract is void at law for want of power to make it, a court of equity has no jurisdiction to enforce such contract, or, in the absence of fraud, accident, or mistake, to so modify it as to make it legal, and then enforce it. Courts of equity can no more disregard statutory and constitutional requirements and provisions than courts of law. They are bound by positive provisions of a statute, equally with courts of law; and, where the transaction or the contract is declared void because not in compliance with express statutory or constitutional provision, a court of equity cannot interpose to give validity to such transaction or contract, or any part thereof.” Litchfield v. Ballou, 114 U. S. 192, 193, 5 Sup. Ct. 820.
It is unnecessary to consider other questions raised by the assignment of errors. The propositions already discussed establish that the bill of appellee cannot be sustained, and our conclusion is that the decree of the circuit court should be reversed and the cause remanded, with directions to set aside the order perpetuating the injunction, and dismiss the bill without prejudice; the costs of this appeal and of the circuit court to be taxed against the appellee. Ordered accordingly.