WARD et al. v. CONGRESS CONST. CO.

(Circuit Court of Appeals, Seventh Circuit. February 9, 1900.)

No. 646.

1. UNITED STATES—RIGHT ACQUIRED IN PROPERTY—LIS PENDENS.
While the United States cannot be sued, or its property rights affected by a judgment, without the express authority of congress, where it acquires property from a party to a pending suit its rights in such property are subject to the result of the litigation, the same as would be those of an individual.

2. JUDGMENTS—MATTERS CONCLUDED—RIGHTS ACQUIRED PENDENTE LITE.
Where a third party acquires the right to occupy and use for a specified purpose property which is the subject of litigation, by agreement with both parties to the suit, his right to such occupation and use cannot be affected by the judgment in which such litigation results.

3. REMOVAL OF CAUSES—SUITS REMOVABLE.
Where, after the rendition of a decree in a suit in equity in a state court enjoining the erection of buildings on certain grounds, a motion was filed by the complainant for an order restraining a third person, who was not a party to the suit, from violating the decree, and notice of such motion was served upon him, the proceeding, in the absence of objection on his part to its form, is equivalent to the filing of a supplemental bill bringing him in as a defendant, and is essentially a new suit, which he may remove to a federal court, where ground for removal exists.

4. SAME—ACTION TO ENJOIN BUILDING OF POST OFFICE.
A corporation, in the performance of a contract made with the secretary of the treasury for the building of an addition to a post office authorized by an act of congress, is a person acting by authority of a revenue officer of the United States, given under color of his office; and a suit in a state court against the corporation to enjoin the building of such addition is removable into the circuit court of the United States, under Rev. St. § 643.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

George P. Merrick and S. S. Gregory, for appellants.
S. H. Bethea, for appellee.

Before WOODS and JENKINS, Circuit Judges, and SEAMAN, District Judge.

WOODS, Circuit Judge. The superior court of Cook county, Ill., in which the proceeding was begun, issued an order of injunction commanding the appellee, the Congress Construction Company, to

"desist and refrain from digging any trench or ditch in Lake Park, in the city of Chicago, and * * * from proceeding with the construction of an addition to the temporary post office or any other building in said Lake Park until the further order of the court." The case having been transferred by writ of certiorari to the circuit court of the United States for the Northern district of Illinois, that court denied a motion to remand the cause to the state court, and on November 7, 1899, sustained a motion to dissolve the injunction. The appeal is from that order. No question is made of the sufficiency of the petition for the writ of certiorari, if, upon the facts disclosed, the case was removable.

The underlying question, aside from that of the jurisdiction of the court below over the subject-matter, is whether the United States and the construction company, which was acting by the employment and under the authority of the treasury department, were bound by a decree of the superior court of Cook county entered on September 14, 1896, in a suit wherein A. Montgomery Ward and George R. Thorne were the complainants, and the city of Chicago, North Chicago Railway Company, Chicago & West Division Railway Company, West Chicago Street-Railway Company, Baltimore & Ohio Railroad Company, Illinois Central Railroad Company, Charles T. Yerkes, De Witt C. Creiger, mayor, William A. Purdy, and Lawrence McGann were the defendants. That decree forbade the erection upon grounds described, including those now in question, of any and all buildings or structures, except those required of the Illinois Central Railroad Company by an ordinance of the city passed on October 21, 1895; but, by express proviso, nothing in the decree was to be construed to prohibit or restrain "the use, occupation, repair, or necessary enlargement" of the Art Institute, at the foot of Adams street; "and, provided, further, that the building now used as a temporary post office by the United States government shall remain where the same is now located, opposite the foot of Washington street, and it, together with all necessary repairs of the same, shall be permitted to remain and to be used as the temporary post office until a permanent post office shall be completed and occupied on the cite bounded by Clark, Adams, Dearborn, and Jackson streets, in said city." The suit in which that decree was rendered was commenced in 1890, and while it was pending, in 1895, the federal authorities obtained of the city and the owners of the property fronting upon the park whatever right was granted for the erection of the temporary post office at its present site. The contention of the appellant is that, though the United States was not, and could not have been, made a party to the suit, it was let into possession by the city of Chicago, which was a party defendant, and, by the law of privity and lis pendens, is bound by the decree subsequently rendered, and is entitled to occupy and maintain in proper repair "the building now used," but not, as in the case of the Art Institute it was expressly provided, to make an addition or enlargement. To this contention the response of the appellee is—First, that the United States did not acquire and does not hold possession under the city of Chicago, but under the appellants

themselves; and, second, that in any event the United States ought not to be bound by the decree. The latter proposition is based on the authority of Stanley v. Schwalby, 162 U. S. 255, 16 Sup. Ct. 754, 40 L. Ed. 960. It was there declared to be "a fundamental principle of public law, * * * that no suit can be maintained against the United States, or against their property, in any court, without express authority of congress"; and it was accordingly held that "neither the secretary of war, nor the attorney general, nor any subordinate of either," had "been authorized to waive the exemption of the United States from judicial process, or to submit the United States or their property to the jurisdiction of the court." But it by no means follows, and we think it not true, that, if the United States shall choose to acquire of one of the parties to a suit an interest in or possession of property already in litigation, it will not, as would an individual purchaser in a like case, take the interest or possession subject to the result of the litigation.

The first proposition, modified to conform to the facts, presents a more interesting and important question. The actual possession of Lake Park was held by the city of Chicago, but under conditions and restrictions which forbade the presence there of all buildings or structures which would interfere with the view from adjacent properties. The owners of those properties, it is settled, had such an interest as enabled them to maintain suits to enjoin the construction or compel the removal of forbidden structures; and in recognition of that fact the United States, after the giving of the consent of the city, refused to proceed with the erection of the temporary post office until the consent of the interested property owners was obtained. That consent was given in writing by all but Ward, who represented the appellants, and by him through his attorney, and thereafter, with his knowledge, and without objection from him, the building was erected, but, on account of the lack of a larger appropriation, upon a smaller scale than originally planned; and the addition now proposed, it is conceded, if erected, would not extend beyond the limits of the original plan, as shown by the drawings in existence when the consent to the erection of the building was given. There is, however, no direct evidence that Ward or others in like interest saw or knew of the drawings or plans, though they could hardly have been ignorant that such plans were customary. It is fairly inferable that they and he had little concern on the subject, and anticipated the erection of such structure as was then supposed or thereafter should be found to be necessary. In respect to the alleged estoppel by the decree of the state court, it is, therefore, not the ordinary case of a third party acquiring from one of the parties to a pending suit an interest in or possession of the disputed land. The possession in this instance was taken with the consent of both parties to the litigation,—the city, representing the fee, and the appellant Ward, representing the easement, if it may be so called, for the supposed vindication of which he instituted this proceeding. No precedent has been cited, but we are of opinion that when both parties to a suit consent to the putting of a third person into possession for a specified purpose,

or to the acquirement by that person of a particular interest in
the property which is the subject of a pending litigation, the result
of the litigation will not affect the right, interest, or possession so
obtained and held. One who gets his right from both parties
can be under no obligation to observe the course of the litigation,
and if, without his participation, the final decree, in an attempt
to declare his right, shall define it inaccurately, he will not be
bound thereby, and, in a dispute with either party, will be at liberty
to assert the right actually acquired. It follows that, if the decree
of the superior court should be construed to forbid any enlarge-
ment of the temporary post office as it stood when the decree was
entered, the restriction is without effect, and if the consent of the
plaintiffs in error, as originally given, was broad enough to include
additions to the present structure, they may be erected. That such
was the original intention and understanding, we have no doubt.
If nothing was said on the subject, that intention nevertheless
should be imputed, because nothing else could have been reasonable.
Chicago is not, and was not expected to be, stationary; and from
the fact that the arrangement was merely temporary, yet likely
to continue for a number of years, it must have been contemplated
that, to begin with, the building should be made as small as prac-
ticable, and whenever necessary should be enlarged.

There remains the question of jurisdiction. Was the case re-
movable from the state court to the federal court? The proceeding
seems to have been begun by a notice entitled in the case already
mentioned, of A. Montgomery Ward et al. v. City of Chicago et al.,
signed by the solicitor of the complainants and addressed to Gus-
tave Ehrhardt, president, Fred A. Britton, secretary, and G. K.
Williams, superintendent, of the Congress Construction Company,
whereby they were notified that on September 16, 1899, at an hour
and place stated, in the room occupied as a court room by Judge
Brentano, the solicitor would ask a rule against them, and each of
them, to show cause why they should not be attached for contempt
of court for violation of the decree and injunction in that cause, and
that at the same time he (the solicitor) would ask that they, and
each of them, be ordered to desist and refrain from digging any
trench, erecting any building, or placing any obstruction whatever
on Lake Park, according to the decree of said court, and upon
the said motion would read the affidavit of George Gascoigne, a
copy of which was served with the notice. Thereafter, on the day
named, without appearance for or representation of the construction
company or the United States, the court entered the injunction,
which, after the transfer, the court below dissolved. Upon the
docketing of the case in the court below, and after entry of the
motions to remand and to dissolve the injunction, the parties joined
in a stipulation containing the provision "that upon the hearing of
these motions the issues involved in said petition shall be limited
strictly to the restraining order of September 16, 1899, and that the
decision of said issues growing out of said order of September 16,
1899, shall in no wise affect said original decree," etc. It was there-
fore simply a case of injunction obtained upon a motion which

served the purpose of a supplemental bill designed to bring before the court an omitted party, who, before the rendition of the decree, could have been brought in only by amendment of the bill. Story, Eq. Pl. §§ 334, 335. But a party thus brought in, who was in no way bound by the original decree, it is evident, must be deemed to have the same right to ask a removal as if he had been made a party at first; and, indeed, a better right, since there can arise no question of the separability of his interests from those of the original defendants. It may be that the motion and the notice in this case were not regular or adequate substitutes for a supplemental bill and subpœna, but the appellee was not bound to dispute their sufficiency before applying for a removal, and whatever question in relation thereto might have been raised in the court below probably was waived by the agreement of the parties to limit the hearing in that court "to the restraining order of September 16, 1899." In its essence, the proceeding was a new suit or new application for an injunction against a new party, rather than an ancillary proceeding for contempt of the original injunction against a party bound thereby.

Touching this question a number of decisions have been cited, or have come under observation. In Chapman v. Barger, 4 Dill. 557, Fed. Cas. No. 2,603, after a judgment in favor of the plaintiff in ejectment, the defendant, as permitted by the statute of Iowa, filed a petition for betterments, and thereupon the plaintiff presented a petition for the removal of the cause. The ruling of the court (Judge Dillon presiding) was that the motion of the defendant was "essentially a part of, and ancillary to, the main suit." "The main suit," it was added, "is at an end, and a judgment has been rendered therein in the state court. That judgment must remain in the state court. It cannot be brought here. The petition of the occupying claimant (whose rights are wholly statutory) is a dependence on the main suit, and cannot be separately removed."

In Webber v. Humphreys, 5 Dill. 223, Fed. Cas. No. 17,326, a motion, under the Missouri statute, for execution against a stockholder after return of execution against a corporation nulla bona, was held not to be a "suit at law or in equity," within the meaning of the statute providing for the removal of causes, and therefore not removable. Reference is made in the opinion to the preceding case, and to West v. Aurora City, 6 Wall. 139, 18 L. Ed. 819, and the court says:

"This is not an independent suit. It is a mere sequence, dependency, or supplemental proceeding, based on the statute, as a means of enforcing the judgment of the state court. * * * As well might it be attempted to remove proceedings under an execution upon a judgment in a state court."

In Salem & L. R. Co. v. Boston & L. R. Co., Fed. Cas. No. 12,249, decided in 1857, Judge Curtis held that a petition for a writ of certiorari to remove a cause must state facts to enable the court to determine whether the case is within the provisions of the act under which removal is sought.

In West v. Aurora City, 6 Wall. 139, 18 L. Ed. 819, the plaintiffs in the original action, upon the filing of a counterclaim by the de-

fendants, dismissed their complaint, and sought a removal of the case on the theory that by dismissing their action they became defendants to an action on the counterclaim, and, being nonresidents of the state, were entitled to a removal. The circuit court remanded the case, and that ruling the supreme court affirmed, concluding its opinion with this dictum:

"A suit removable from a state court must be a suit regularly commenced by a citizen of the state in which the suit is brought, by process served upon a defendant who is a citizen of another state, and who, if he does not elect to remove, is bound to submit to the jurisdiction of the state court."

In Bank v. Turnbull, 16 Wall. 190, 21 L. Ed. 296, execution on a judgment in a state court, to which Turnbull & Co. were not parties, had been levied upon goods which Turnbull & Co. claimed to be theirs; and, the state court having on their motion ordered an issue in which they should be deemed to be the plaintiffs to determine the title, they obtained of the United States circuit court an order for the removal of the cause. The supreme court (Justice Strong dissenting) held that, conceding it to be a suit, the proceeding was merely auxiliary to the original action, and not removable.

In Barrow v. Hunton, 99 U. S. 80, 25 L. Ed. 407, it was held that an action of nullity in Louisiana, wherein it was sought to nullify a judgment for reasons of form, was auxiliary to the principal action, and not removable. In the opinion is found this important expression:

"The character of the cases themselves is always open to examination for the purpose of determining whether, ratione materiæ, the courts of the United States are competent to take jurisdiction thereof. State rules on the subject cannot deprive them of it."

In Bondurant v. Watson, 103 U. S. 281, 26 L. Ed. 447, a suit by A. to enjoin the levying of an execution on a judgment in favor of B. against C. upon A.'s land was declared removable; and Bank v. Turnbull, 16 Wall. 190, 21 L. Ed. 296, was declared not in point, the court saying:

"That was a statutory proceeding to try in a summary way the title to personal property seized on execution. It was nothing more than a method prescribed by the law to enable the court to direct and control its own process, and, as decided by this court, was merely auxiliary to, and a graft upon, the original action."

The definition of a suit quoted from the opinion in West v. Aurora City was good enough for the purposes of that case, but a better one was given by Chief Justice Marshall in Weston v. City Council of Charleston, 2 Pet. 464, 7 L. Ed. 486, where he said:

"The term is certainly a very comprehensive one, and is said to apply to any proceeding in a court of justice by which an individual pursues that remedy in the court of justice which the law affords him. The modes of proceeding may be various, but, if the right is litigated between the parties in a court of justice, the proceeding by which the decision is sought is a suit."

This definition is approved in Holmes v. Jennison, 14 Pet. 540, 10 L. Ed. 579; Case of Sewing-Mach. Cos., 18 Wall. 553, 585, 21 L. Ed. 914; Kohl v. U. S., 91 U. S. 367, 375, 23 L. Ed. 449; New Orleans, M. & T. R. Co. v. Mississippi, 102 U. S. 135, 26 L. Ed. 96; Upshur Co. v. Rich, 135 U. S. 467, 474, 10 Sup. Ct. 651, 34 L. Ed. 196, and cases

there cited; Wilson v. Seligman, 144 U. S. 41, 12 Sup. Ct. 541, 36 L. Ed. 338; Mooney v. Manufacturing Co., 34 U. S. App. 581, 18 C. C. A. 421, 72 Fed. 32. See, also, Iron Co. v. Bates (C. C.) 56 Fed. 737; In re The Jarnecke Ditch (C. C.) 69 Fed. 161, and other cases cited in 2 Notes, U. S. Rep. 557. In McCullough v. Large (C. C.) 20 Fed. 309, it was held that a rule upon a United States internal revenue collector, granted by a state court upon the petition of the sheriff, to show cause why an attachment should not issue against him for contempt of the process of the court, in refusing to permit the sheriff to enter a bonded warehouse and seize in execution whiskies held therein for internal revenue tax, was a civil suit removable into the United States circuit court under section 643 of the Revised Statutes.

While the proceeding now in question evidently was intended to be auxiliary to the decree of the state court, and was so in form, yet in fact, ratione materiæ, it was not of that character. It was brought against a corporation or its officers, who were not parties to that decree, nor bound thereby by reason of privity to the defendants or any of them; and the order of injunction entered can be regarded only as an attempt to bind a new party which was not affected by the original order. Whether, under the state practice, it was regular and permissible, after final decree against the original defendants, to bring in a new party by motion, as was done in this instance, and obtain against it a preliminary injunction, as if it had been named a defendant in the bill, as already suggested, need not be considered, and the party so brought in was not bound to inquire. The company might have waived service, and on being brought into the case as it was, and finding the court asserting jurisdiction over it, it had the same right to ask a removal as it would have had if it had been named originally in the bill, and brought in by process duly served before the decree against the other parties. As against it, there had been no decree, and the motion for an injunction was a new proceeding.

The right of removal is rested by counsel upon section 643 of the Revised Statutes, which provides as follows:

"When any civil suit or criminal prosecution is commenced in any court of a state against any officer appointed under or acting by authority of any revenue law of the United States now or hereafter enacted, or against any person acting under or by authority of any such officer, on account of any act done under color of his office, or of any such law, or on account of any right, title or authority claimed by such officer or other person under any such law * * * the said suit or prosecution may at any time before the trial or final hearing thereof be removed for trial into the circuit court," etc.

The record shows a contract made by the secretary of the treasury with the Congress Construction Company for the building of the proposed addition to the post office in pursuance of the acts of July 1, 1898, and March 3, 1899 (30 Stat. 597, 1074), by which appropriations were made for the construction thereof. The provision in section 643 for the removal of causes has been liberally construed, as, for manifest reasons, it should be. In Warner v. Fowler, 4 Blatchf. 311, 29 Fed. Cas. 255, where the action was against a post-

master for refusal to deliver a letter to the plaintiff, the action was held to be removable; and the decision was cited with approval in U. S. v. James, 13 Blatchf. 207, 26 Fed. Cas. 577. These cases, it is true, were decided at circuit; but they seem to be justified by the decision of the supreme court in U. S. v. Bromley, 12 How. 88, 13 L. Ed. 905, where, in an action of debt, founded on the tenth section of the post office law of March 3, 1845 (5 Stat. 736), that act was held to be a revenue law of the United States. The case of U. S. v. Norton, 91 U. S. 569, 23 L. Ed. 454, is cited to the contrary, but that was a criminal case, in which the question was whether in a prosecution under the act of May 17, 1864 (13 Stat. 76), for the establishment of the postal money-order system, the limitation of two years prescribed by the act of April 30, 1790 (1 Stat. 119, § 32), should be applied, or the limitation of five years prescribed by the act of March 26, 1804 (2 Stat. 290, § 3), concerning "crimes arising under the revenue laws of the United States"; and, in accord with the rule of strict construction in favor of liberty, it was held that the money order law was not a revenue law, within the meaning of the act of March 26, 1804. But in the opinion the cases of U. S. v. Bromley and U. S. v. Fowler, supra, were referred to, and declared "clearly distinguishable, with respect to the grounds upon which the judgment proceeded." Our conclusion is that the jurisdiction of the court below was complete, and that its order dissolving the injunction should be affirmed.

SEAMAN, District Judge (concurring). The application to enjoin the work of enlarging the temporary post-office building rests on no substantial ground, and the order thereupon of the court below is clearly sustainable if a case was presented for its removal from the superior court of Cook county. Unquestionably the jurisdiction of the United States court to that end must be conferred by statute, but "the right and duty of the national government to have its constitution and laws interpreted and applied by its own judicial tribunals," and to thus protect its officers and agents lawfully engaged in the execution of its enactments, is well established. Mayor v. Cooper, 6 Wall. 247, 253, 18 L. Ed. 851; Tennessee v. Davis, 100 U. S. 257, 265, 25 L. Ed. 648. Such removal from a state court is not in the nature of appellate jurisdiction, but a mode of acquiring original jurisdiction of a cause within federal cognizance. Railway Co. v. Whitton's Adm'r, 13 Wall. 270, 287, 20 L. Ed. 571. The operations against which the injunctional order of the state court was directed were conducted under the authority of the secretary of the treasury, in purported execution of the acts of congress providing for an addition to the post-office building. It is true that no invasion of private rights of occupancy was thereby authorized, and that none could be authorized except through legal condemnation, but such rights were clearly determinable in the federal courts, if the statute so provided; and I concur in the opinion that section 643 of the Revised Statutes is applicable to the case at bar, and that removal was proper. The tests are (1) that the secretary of the treasury, by whom the work was ordered, was an officer ad-

ministering the revenue laws of the United States, acting "under color of his office," and not that the act in question related to "the raising of revenues" (vide U. S. v. James, 13 Blatchf. 207, Fed. Cas. No. 15,464; and (2) that new proceedings were pending in a state court against such action, wherein hearing was open to such officer and his agents. Both tests are satisfied, within the authorities cited in the opinion.

It is therefore ordered that the decree below be affirmed.