## BRYANT BROS. CO. v. ROBINSON.

### (Circuit Court of Appeals, Fifth Circuit. December 31, 1906.)

### No. 1,543.

**1. REMOVAL OF CAUSES—SUITS AGAINST FEDERAL OFFICERS.**

Where suit was brought in a state court against defendant as "the duly qualified and acting postmaster at Dallas, Tex.," and sought relief against certain official acts performed by the defendant under orders of the Postmaster General, it was a suit against an officer of the United States in his official capacity, and removable to the federal courts, under Act Cong. Aug. 13, 1888, c. 866, § 2, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], authorizing the removal of cases arising under the laws of the United States of which the Circuit Courts of the United States are given original jurisdiction by section 1.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 49.]

**2. SAME—PROCEDURE.**

The proper procedure for removing a cause from a state to a federal court as authorized by act Cong. Aug. 13, 1888, c. 866, §§ 1, 2, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], is for the defendant to file a petition for removal in the state court, together with a bond conditioned that the defendant will enter in the federal Circuit Court on the 1st day of its next session, a transcript of the record from the state court, and will pay costs awarded in case it shall be determined that the suit has been wrongfully removed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, §§ 165, 189.]

**8. SAME—REMAND.**

Act Cong. March 3, 1875, c. 137, § 5, 18 Stat. 472 [U. S. Comp. St. 1901, p. 511], provides that when a case is removed from a state court to a Circuit Court of the United States, it shall be remanded whenever it shall appear to the satisfaction of the Circuit Court at any time after removal that the suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of such Circuit Court. *Held* that, where a cause was properly removable, and was actually removed, it would not be remanded because of an irregularity in the proceedings for removal or because such proceedings were taken under the improper statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 221.]

**4. SAME—PROCEEDINGS AFTER REMOVAL.**

Rev. St. § 643 [U. S. Comp. St. 1901, p. 521], provides that after removal of a cause from a state to the federal courts, it shall proceed as a cause originally commenced in the federal court. Section 914 [U. S. Comp. St. 1901, p. 684] declares that the practice, pleadings, forms and modes of civil procedure other than equity and admiralty causes in the federal and District Courts shall conform as near as may be to the practice in the state courts, and section 913 [U. S. Comp. St. 1901, p. 683] requires that the forms and modes of procedure in suits in equity shall be according to the rules and usages which belong to courts of equity and to rules of court made in conformity to law. *Held*, that where a suit in equity is removed from a state to a federal court, it must thereafter conform to the equity practice and rules in force in such court, regardless of the forms of practice in equitable proceedings in the state court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 246.]

**5. EQUITY—PLEADING—DEMURRER—CERTIFICATE OF COUNSEL—AFFIDAVIT.**

A demurrer to a bill not accompanied by a certificate of counsel that it was well founded in point of law, nor supported by the affidavit of the

defendant that it was not interposed for delay as required by equity rule 31, was fatally defective.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 613, 627.]

6. SAME—ANSWER—FILING—TIME.

Equity rule 32 authorizes a defendant to demur to a part of the bill and answer as to the residue, and rule 37 declares that no demurrer or plea shall be held bad and overruled only because the answer of the defendant may extend to some part of the same matter covered by such demurrer or plea. *Held*, that a defendant was not entitled to file a demurrer and answer at the same time both attacking the entire bill, and that the simultaneous filing of such answer operated as a withdrawal of the demurrer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 488.]

7. COURTS—FEDERAL COURTS—EQUITY RULES.

Equity rules adopted by the federal courts, as authorized by Rev. St. § 917 [U. S. Comp. St. 1901, p. 684], have the force and effect of law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 274, 294, 911.]

Appeal from the Circuit Court of the United States for the Northern District of Texas.

This suit was begun by the plaintiff, Bryant Bros. Company, a corporation organized under the laws of Texas, filing its petition in a district court of Dallas county, Tex., against the defendant, D. A. Robinson, the duly qualified and acting postmaster of Dallas, Tex. The petition was verified by plaintiff's affidavit, and its allegations are substantially as follows: That plaintiff was engaged in the business of selling a mineral rod, which was a legitimate article of commerce, and which had been thoroughly tested many times and found efficient; that plaintiff's business as a seller of said rods yielded it a net revenue of about $5,000 per annum; the average selling price of the rods being about $8, and the average profit being about $3 each rod; that plaintiff and its predecessors had been engaged in the business at Dallas for about eight years, during which time they always had been solvent and responsible financially, and never had been sued or otherwise disturbed by persons who had purchased rods; that plaintiff had been summoned to appear before the Assistant Attorney General for the Post Office Department at Washington, to show cause why a fraud order should not issue against it; that it had appeared before said Assistant Attorney General of the Post Office Department, and had filed its answer and introduced evidence, both of which showed without contradiction that plaintiff was not using the mails for the conduct of a scheme devised to defraud; that the evidence offered by the plaintiff was all the evidence produced on the hearing; that the Assistant Attorney General never had before him any other evidence than that introduced by the plaintiff (all the evidence aforesaid being attached as exhibits to the petition); that the Assistant Attorney General, whose name was R. P. Goodwin, made the order without any evidence proving or tending to prove that the plaintiff was engaged in a scheme or device for obtaining money through the mails by means of false or fraudulent pretenses, representations, or promises, and that the order was made by the said R. P. Goodwin, but was signed by George B. Cortelyou, Postmaster General, who had never heard nor considered any evidence bearing on the fact as to whether or not the plaintiff had been conducting a scheme or device for obtaining money through the mails by false or fraudulent pretenses, representations, or promises; that the order so made was what is usually known as a "fraud order," the bill setting up the terms and legal effect of the order; that plaintiff's business was largely conducted through the post office, and could not be conducted successfully without using the mail and postal facilities; that the defendant, as postmaster, was enforcing said order; that letters containing checks, drafts, money orders, and money, addressed to the plaintiff, had been detained, and were then being held in the post office at Dallas, and would within a few days be returned by the postmaster to the senders with the envelopes marked

"Fraudulent," the effect of all of which would be to destroy the business of the plaintiff.

An injunction was granted by the state judge. The defendant presented his *petition to the United States Circuit Court for the Northern District of Texas, in which he described the suit which had been brought against him, and alleged that the suit for injunction seeks "to restrain him from performing his duties as the postmaster of the United States of America, at Dallas, Tex., to wit, his duty and duties under the laws and regulations of the Post Office Department of the United States of America, which said laws and regulations are a portion and a part of the revenue laws of the said United States government, and to prevent him, as aforesaid, from carrying into effect the lawful orders of the said George B. Cortelyou, Postmaster General of the United States, as aforesaid, which said orders were made under the laws of the United States of America; that all of the acts sought to be restrained and enjoined in the said suit are the acts and duties required of this petitioner as the said officer of the United States of America, and under color of his said office, and by authority of the said postal laws of the United States of America." The defendant concluded his petition with a prayer that the suit be removed from the state court to the Circuit Court. The cause having been removed to the Circuit Court, a motion was made by the plaintiff to remand it to the state court. The Circuit Court overruled this motion. Afterwards, a final decree was made, sustaining demurrers to the bill, and the bill was dismissed. The plaintiff appealed to this court. A further statement of the procedure in the cause appears in the opinion.

J. M. McCormick, for appellant.

Wm. H. Atwell, U. S. Atty., for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge (after making the foregoing statement of the case).

We first consider the assignment that the court erred in refusing to remand the cause to the state court. The petition beginning the suit in the state court shows that it was brought against the defendant "as the duly qualified and acting postmaster at Dallas, Tex." The relief sought is against certain official acts of the postmaster performed by him under the orders and directions of the Postmaster General. It is a suit against an officer of the United States, and the official character of the defendant appears from the plaintiff's petition. The first section of the act of August 13, 1888, confers jurisdiction on the Circuit Courts of the United States, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000, and arising under the Constitution or laws of the United States. It is provided by the second section of the same act that any suit of a civil nature, at common law or in equity, arising under the Constitution or laws of the United States, of which the Circuit Courts of the United States are given original jurisdiction by the preceding section, may be removed by the defendant or the defendants therein to the Circuit Court of the United States for the proper district. Act Aug. 13, 1888, c. 866, 25 Stat. 433, 1 Rev. St. Supp. (2d Ed.) p. 611 [U. S. Comp. St. 1901, p. 508] : A suit against an officer of the United States for acts done in the performance of official duties is a case arising under the laws of the United States. Bachrack v. Norton, 132 U. S. 337, 10 Sup. Ct. 106, 33 L. Ed. 377; Sonnentheil

v. Christian Moerlein Brewing Co., 172 U. S. 401, 19 Sup. Ct. 233, 43 L. Ed. 492. The case was, therefore, clearly removable under this statute. Feibelman v. Packard, 109 U. S. 421, 3 Sup. Ct. 289, 27 L. Ed. 984; Eighmy v. Poucher (C. C.) 83 Fed. 855; New Orleans National Bank v. Merchant (C. C.) 18 Fed. 841; Black's Dillon on Removal of Causes, § 124. The proper procedure for removal under this act was for the defendant to file a petition in the suit in the state court, and to file a bond with surety, with condition for his entering in the Circuit Court on the 1st day of its next session a transcript of the record from the state court, and for the payment of costs that may be awarded by the Circuit Court if that court should hold that the suit was wrongfully removed. It does not appear from the record that the defendant filed any such petition or bond in the state court. The record shows that he made application to the federal court under section 643 of the Revised Statutes [U. S. Comp. St. 1901, p. 521] and under the provisions of that section obtained the removal of the cause. Although no petition was filed in the state court, that court, on receiving notice of the proceeding in the federal court to remove the cause, made the following order:.

"It is ordered by the court that the above-styled and numbered cause be removed to said United States court. and the clerk is. directed to transmit the filed papers, together with copies of all orders made by this court in said cause, or a transcript of the same, and together with a bill of all costs incurred in said cause in this court, duly certified. * * * "

Pursuant to this order of the state court, a transcript of the record in the case was duly filed in the Circuit Court. The plaintiff moved the Circuit Court to remand the case to the state court, contending that it appeared from the record that the cause was not removable under the provisions of section 643 of the Revised Statutes. The Circuit Court refused to grant this motion, and its refusal is assigned as error. Section 643 of the Revised Statutes provides that:

"When any civil suit or criminal prosecution is commenced in any court of a state against any officer appointed under. or acting by authority of any revenue law of the United States, now or hereafter enacted, or against any person acting under or by authority of such officer on account of any act done under color of his office, or of any such law, on account of any right, title or authority claimed by such officer. or other person under such law * * * the said suit or prosecution may at any time before the trial or final hearing thereof be removed for trial in the Circuit Court," etc.

The cause was properly removable under this section if the postmaster can properly be called an "officer appointed under, or acting by authority of any revenue law of the United States." It is said in Black's Dillon on Removal of Causes, § 41, that "the post office laws of the United States are 'revenue laws,' within the meaning of this statute." In Warner v. Fowler, 4 Blatchf. 311, Fed. Cas. No. 17,182, a suit against a postmaster for an alleged wrongful refusal to deliver a letter to the plaintiff was held removable under this statute, the court deciding that the post office laws of the United States are "revenue" laws within its meaning. In Ward v. Congress Const. Co., 99 Fed. 598, 39 C. C. A. 669, it was held that a corporation, in the performance of a contract made with the Secretary of the Treasury for the build-

of an addition to a post office authorized by an act of Congress, person acting by authority of a revenue officer of the United States, en under color of his office; and a suit in the state court against the poration to enjoin the building of such addition is removable into the Circuit Court of the United States, under Rev. St. § 643. The court said: "The provision of section 643 for the removal of causes has been liberally construed, as, for manifest reasons, it should be," and Warner v. Fowler, supra, is quoted and approved. In United States v. James, 13 Blatchf. 207, Fed. Cas. No. 15,464, it was held that "while the post office laws are revenue laws, within the meaning of the statute cited, they are not laws for raising revenue, within the provision of the Constitution."

There is no decision of the Supreme Court decisive of the question as to whether this cause is removable under section 643. In Public Clearing House v. Coyne, 194 U. S. 497, 506, 24 Sup. Ct. 789, 48 L. Ed. 1092, the Supreme Court speaks of the Post Office Department as not being "a necessary part of the civil government in the same sense in which the protection of life, liberty, and property, the defense of the government against insurrection and foreign invasion, and the administration of public justice, are; but is a public function assumed and established by Congress for the general welfare, and, in most countries, its expenses are paid solely by the persons making use of its facilities; and it returns, or is presumed to return, a revenue to the government, and really operates as a public and efficient method of taxation." United States v. Norton, 91 U. S. 566, 23 L. Ed. 454, is cited as an authority against the application of the statute to this case. It holds that the act entitled "An act to establish a postal money-order system," approved May 17, 1864, c. 87, 13 Stat. 76, is not a revenue law within the meaning of the act entitled "An act in addition to the act entitled 'An act for the punishment of certain crimes against the United States,'" approved March 26, 1804, c. 40, 2 Stat. 290. United States v. Hill, 123 U. S. 681, 8 Sup. Ct. 308, 31 L. Ed. 275, contains expressions which confine the phrase "revenue law," when used in connection with the jurisdiction of the United States courts, to laws imposing duties on imports or tonnage, or a law providing in terms for revenue; but the case is one in which the question before the court was whether a clerk of a court, not a United States officer, but a person appointed by a court independent of the executive department of the government, who was bound to pay his surplus earnings into the United States Treasury, was a revenue officer; and the question was decided in the negative.

The contention in behalf of the motion to remand is that section 643 relates only to laws providing in terms for revenue—laws traceable directly to the constitutional power granted to Congress to levy and collect taxes, duties, imposts, and excises, and that it has no application to laws passed under the authority conferred on Congress to establish post offices and post roads. Const. art. 1, § 8. Counsel for the defendant in error, in United States v. Bromley, 12 How. 88, 96, 13 L. Ed. 905, urged the same limitation upon the meaning of "revenue law," and pointed out that the constitutional source of power to pass

postal laws was separate and distinct from that to pass revenue laws. Responding to that contention, the court said:

"That the act which prescribes the offense charged is a revenue law, there would seem to be no doubt. In its title, it is declared to be an act to reduce the rates of postage, and for the prevention of frauds on the revenue of the Post Office Department. In its character and object it is a revenue law, as it acts upon the rates of postage and increases the revenue by prohibiting and punishing fraudulent acts which lessen it. Under the act of 1836, the revenue of the Post Office Department is paid into the Treasury. Revenue is the income of a state, and the revenue of the Post Office Department, being raised by a tax on mailable matter conveyed in the mail, and which is disbursed in the public service, is as much a part of the income of the government as moneys collected for duties on imports."

This language strongly indicates that postal laws may be revenue laws within the meaning of section 643, but the expressions we have quoted from United States v. Hill, supra, may point to a different conclusion.

When the Circuit Court was moved to remand the case, the motion, we think, involved more than the mere question as to whether or not the cause was removable under section 643. When a case is removed from a state court to a Circuit Court, it should be remanded to the court from which it was removed whenever "it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been * * * removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court. * * *" Act March 3, 1875, c. 137, § 5, 18 Stat. 472 [U. S. Comp. St. 1901, p. 511]. It appears from the record that the case does substantially involve a dispute or controversy properly within the jurisdiction of the Circuit Court. The difficulty is as to the regularity of its removal. If a petition had been filed in the state court in due form, accompanied by the proper bond, and the transcript of the cause filed in the Circuit Court, the jurisdiction of the Circuit Court would have attached, although the state court had refused to make the proper order. Kern v. Huidekoper, 103 U. S. 485, 26 L. Ed. 354; Mo. Pac. Ry. Co. v. Fitzgerald, 160 U. S. 556, 579, 16 Sup. Ct. 389, 40 L. Ed. 536. The record does not show the filing of a petition and the giving of a bond, but it does show that the state court made an order that the case be removed to the Circuit Court, and that the transcript was duly filed in the Circuit Court.

In Osgood v. Chicago D. & V. R. Co., 6 Biss. 330, Fed. Cas. No. 10,604, it was held by Drummond, Circuit Judge, that a case is to be remanded only "when it shall appear to the satisfaction of the federal court that the suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of the court, or that the parties have been improperly or collusively made, or joined, for the purpose of creating a case cognizable under the act. It is true that the act prescribes the manner in which the removal shall be made, and the directions that the law should be complied with. But the fifth section does not authorize the court to remand or dismiss the cause for the reason that it may appear that there was any irregularity in the means taken to procure the removal. The purpose obviously was, if the rec-

ord was filed in the federal court under the law, and the court could see that it had jurisdiction of the case, that it should retain it, notwithstanding there might be defects in the manner of removal."

In Ruckman v. Ruckman (C. C.) 1 Fed. 587, 591, the court said:

"The question in this court is not whether the counsel for the petitioners comprehends and assigns the true reasons for the removal, but whether the whole record reveals a case over which the court has jurisdiction. No matter how irregularly the petition brings up the suit, when it is here, the only question is whether it involves a controversy properly within the jurisdiction of the court. If it does, it will not be remanded because a mistake is made by the counsel of the petitioners in assigning grounds for the removal which prove to be untenable."

In Northern Pacific Terminal Company v. Lowenberg (C. C.) 18 Fed. 339, 343, Judge Deady said:

"Besides, the case having been brought here, the question upon the motion to remand is not whether there are any irregularities in the proceedings for removal, but whether on the face of the record it satisfactorily appears that the action does not involve a controversy within the jurisdiction of this court. That there is such a controversy in this case is too plain for argument; and therefore the right of the petitioners to have this cause remain within the jurisdiction of this tribunal for trial is clear beyond cavil or doubt."

In Dennis v. County of Alachua, 3 Woods, 683, Fed. Cas. No. 3,791, it was held that:

"When a cause is once removed from a state to a federal court, and there are no jurisdictional objections to its remaining there, it will not be remanded or dismissed for defects in the bond for removal, insufficiency of sureties thereon, or other irregularities which can be remedied or have not worked any prejudice to the opposite party."

In Woolridge v. McKenna (C. C.) 8 Fed. 650, 667, Judge Hammond said:

"There seems to be the recognition of a general principle that where a cause has been removed and falls within the act of Congress, it will not be remanded for irregularities which can be remedied and have worked no injury to the adverse party."

Where there is substantial doubt about the jurisdiction of the Circuit Court, it has been often held that it should be solved against the jurisdiction and that the cause should be remanded (State v. Bradley [C. C.] 26 Fed. 289, 18 Ency. Pldg. & Prac. p. 378, note 5, and cases there cited) ; but where there is no doubt about the case being one of which the Circuit Court has jurisdiction, and the only doubt is as to the regularity of the removal, or as to whether the application for removal has been made under the proper statute, the motion to remand should be overruled. We think the Circuit Court ruled correctly in refusing to remand the cause.

We now consider the assignment that the court erred in sustaining the demurrers to the bill. The record from the state court was filed in the Circuit Court on December 28, 1905. The respondent, David A. Robinson, on January 8, 1906, filed in the Circuit Court three demurrers to the whole bill, and an answer to the whole bill. Each demurrer and the answer is signed by respondent's solicitor, but no certificate of counsel nor affidavit of respondent is attached to the demurrers. The cause having been removed to the federal court, its further

progress was governed by the law of that court. Ex parte Fisk, 113 U. S. 713, 726, 5 Sup. Ct. 724, 28 L. Ed. 1117. The statute under which the application to remove the case was made provides that, after its removal it "shall proceed as a cause originally commenced in that court." Rev. St. U. S. § 643.

The practice, pleadings, forms, and modes of proceeding in civil causes, other than equity and admiralty causes, in the Circuit and District Courts are made to conform as near as may be to the practice in the state courts. Rev. St. U. S. § 914 [U. S. Comp. St. 1901, p. 684]. The section of the statute just cited expressly excludes equity cases from its operation, and the exclusion is emphasized by the preceding section, which provides that the forms and modes of proceedings in suits of equity jurisdiction shall be according to the rules and usages which belong to courts of equity and to rules of court made in conformity to law. Rev. St. U. S. § 913 [U. S. Comp. St. 1901, p. 683]. While the practice in cases at law in the federal courts follows as near as may be that of the state in which a federal court is held, the practice and procedure in equity cases in the federal courts, being governed by federal law and uniform rules, is the same, no matter in which state the court is sitting. 1 Bates, Eq. Proc. § 20.

The thirty-first rule in equity provides that:

"No demurrer or plea shall be allowed to be filed to any bill, unless upon a certificate of counsel, that in his opinion it is well founded in point of law, and supported by the affidavit of the defendant; that it is not interposed for delay; and, if a plea, that it is true in point of fact."

In National Bank v. Insurance Company, 104 U. S. 54, 26 L. Ed. 693, it was held that a plea that did not conform to this rule could be "disregarded on that account." In Sheffield Furnace Co. v. Witherow, 149 U. S. 574, 576, 13 Sup. Ct. 936, 37 L. Ed. 853, the court said that:

"Inasmuch as the so-called demurrer was fatally defective in lacking the affidavit of defendant and certificate of counsel, required by rule 31, there was no error in disregarding it, and entering a decree pro confesso."

Referring to demurrers that did not conform to the rule, Judge Maxey said, in Preston v. Finley (C. C.) 72 Fed. 850, 854, "the demurrers, as such, cannot be regarded;" and in American S. & W. Co. v. Wire Drawers' & Die Makers Unions etc. (C. C.) 90 Fed. 598, Judge Hammond said, of such a demurrer, that "it must be wholly disregarded." See, also, Secor v. Singleton (C. C.) 9 Fed. 809.

In Brazoria County v. Youngstown Bridge Co., 80 Fed. 10, 25 C. C. A. 306, the irregularity in the demurrer was held waived by the complainants going to trial on it without objection. In that case there was an affidavit of counsel that the demurrer was not interposed for delay. Whether the affidavit of counsel would be received as a substitute for the affidavit of the defendant and the certificate of counsel, was mooted, but not decided; but it was held that the defect was waived. In the case at bar, there is no effort whatever to comply with the rule; and, besides, here, unlike the case just cited, the defendant has attached to his demurrer to the whole bill an answer to the whole bill. Foster says that, by setting the demurrer down for argu-

ment, any irregularity in filing it would probably be waived, "except the omission of the affidavit and certificate of counsel." 1 Foster's Fed. Prac. (3d Ed.) § 119. A defendant may demur to part of a bill and answer part of it (Equity rule 32), but he is not permitted to demur to the whole bill and at the same time answer the entire bill. When such pleadings are filed, the effect of the answer is to overrule or withdraw the demurrer, and the answer alone should be regarded. 1 Bates Fed. Eq. Proc. § 207; Story's Eq. Pldg. § 442; 6 Ency. Pldg. & Prac. p. 38, § 3. It was formerly the rule that an answer to any part of a bill demurred to would overrule the demurrer, even though the part answered was immaterial. 1 Daniell's Chan. Pldg. & Prac. (4th Ed.) 589. The severity of that rule, operating against a defendant who in framing his answer to part of the bill made it inadvertently extend to parts of the bill to which he had demurred, caused it to be abandoned in this country and in England.

The practice which now prevails is prescribed by Equity rule 37:

"No demurrer or plea shall be held bad and overruled upon argument, only because the answer of the defendant may extend to some part of the same matter as may be covered by such demurrer or plea."

Construing this rule in Crescent City, etc., v. Butchers', etc. (C. C.) 12 Fed. 225, Pardee, Circuit Judge, said:

"We notice that with the demurrer to the whole bill and four separate pleas, each going to the whole bill, there is also filed an answer to the whole bill, in which all the matters averred in the pleas are again set forth. Under the equity rule 32, a defendant may demur to part of a bill, plead to part, and answer as to the residue. Under the equity rule 37, no demurrer or plea shall be held bad and overruled upon argument, only because the answer of the defendant may extend to some part of the same matter as may be covered by such demurrer or plea. But we do not understand that there is any rule that allows a defendant to demur to the whole bill, plead to the whole bill, and answer to the whole bill at the same time. The effect of such pleading is that the plea is taken as waiving the demurrer, and the answer as waiving the plea."

In Huntington v. Laidley (C. C.) 79 Fed. 865, Goff, Circuit Judge, held that "a plea containing a full defense to the bill is waived by an answer which goes to the whole bill." And the learned judge held that rule 37 "only applies in cases where the demurrer or plea extends to only a part of the bill, and the answer is intended to cover the residue." We are aware of the fact that the rule was given a more extended application in Hayes v. Dayton (C. C.) 18 Blatchf. 425, 8 Fed. 702, but we think that the words of the rule, construed in connection with rule 32, prevents its application to cases where the defendant has both demurred to and answered the whole bill. There is, of course, no doubt, under the authorities, that the court below could have entirely disregarded the demurrer, and, if no answer had been filed, could have entered a decree pro confesso for the complainant. The answer being on file overruled the demurrer—even if it had complied with rule 31—and the plaintiff could have filed a replication and proceeded to take evidence under the rules. The case, however, was tried on the demurrer without objection, except that the plaintiff noted an exception to the ruling on the demurrer.

· The question is, whether or not this court should notice on this appeal the fatal defect in the demurrer and its withdrawal, waiver, or overruling by the answer which was filed with it. The answers and demurrers were framed in accordance with the practice in the state courts of Texas, where the procedure in law cases and equity cases is the same. There are fundamental objections to such practice being adopted in federal courts, where equity cases and law cases are kept separate by law. We do not think the federal courts should permit the adoption of a state practice which involves an entire abandonment of the law of procedure in the federal courts of equity, even when solicitors fail to make objection. Congr has conferred power on the Supreme Court to make the equity rules we have quoted, and they have the force and effect of law. Rev. St. U. S. § 917 [U. S. Comp. St. 1901, p. 684]. They produce a uniformity in the equity practice that. is very desirable. The rules we have cited are efficient factors in preventing frivolous ·demurrers being filed, and in preventing demurrers for delay. If the courts permit them to be entirely ignored, it would lead to a want of uniformity in the practice and to augmenting the evils the rules were intended to suppress and prevent. The departure from the proper procedure is so great in this case that we think it should not be permitted to pass unnoticed. It was error to sustain the demurrer and dismiss the bill.

The decree·sustaining the demurrers and dismissing the bill is reversed, and the cause remanded, with instructions to entirely disregard the so-called demurrers, or to strike them from· the file if motion be made for that purpose. and to proceed in the case in conformity with the usual procedure in equity.