THE UNITED STATES, PLAINTIFFS, IN ERROR, *v.* DANIEL H. BROMLEY.

The act of Congress passed on the 3d of March, 1845, (5 Stat. at Large, 736,) forbids the transportation of letters, packages, or other mailable matter, except such as may have relation to some part of the cargo or some article at the same time conveyed in a stage or other vehicle, when such transportation is over a mail route.

A letter or order, although unsealed, directing tobacco to be sent by the return boat as a commercial transaction, was within the prohibition of the Statute.

Under the act of Congress passed on the 31st of May, 1844, (5 Stat. at Large, 658,) directing that final judgments in a circuit court in any civil action brought by the United States for the enforcement of the revenue laws may be reviewed in this court without regard to the sum or value in controversy, this court can exercise jurisdiction. The revenue of the Post-Office Department is a part of the revenue of the government.

THIS case was brought up by writ of error, from the Circuit Court of the United States for the Northern District of New York.

It was an action of debt on statute, commenced in the District Court of Northern New York, founded on the *tenth* section of the act of 3d March, 1845: " An act to reduce the rates of postage; to limit the use, and correct the abuse, of the franking privilege; and for the prevention of frauds on the revenue of the Post-Office Department."

The section is as follows: " That it shall not be lawful for any stage-coach, railroad car, steamboat, packet-boat, or other vehicle or vessel, nor any of the owners, managers, servants, or crews of either, which regularly performs trips at stated periods on a post-route, or between two or more cities, towns, or other places, from one to the other of which the United States mail is regularly conveyed under the authority of the Post-Office Department, to transport or convey, otherwise than in the mail, any letter or letters, packet or packages of letters, or other mailable matter whatsoever, except such as may have relation to some part of the cargo of such steamboat, packet-boat, or other vessel, or to some article at the same time conveyed by the same stage-coach, railroad car, or other vehicle; and excepting also newspapers, pamphlets, magazines, and periodicals; and for every such offence, the owner or owners of the stage-coach, railroad car, steamboat, packet-boat, or other vehicle or vessel, shall forfeit and pay the sum of one hundred dollars; and the driver, captain, conductor, or person having charge of any such stage-coach, railroad car, steamboat, packet-boat, or other vehicle or vessel at the time of the commission of any such offence, and who shall not at that time be the owner thereof, in whole or in part, shall in like manner forfeit and pay, in every such case of offence, the sum of fifty dollars." 5 Stat. at Large, 736.

What constitutes mailable matter, is defined in the fifteenth section. Ib. 737.

The declaration contains ten counts, and in substance, they all and each of them charge, that Bromley, the defendant, was the captain of the packet-boat Empire, which regularly performed trips, at stated periods, between two places, from one to the other of which places the United States mail was regularly conveyed, under the authority of the Post-Office Department, to wit, between Albion and Rochester; and that the said packet-boat, and the said defendant so being such captain, and the managers, servants, and crews of the said packet-boat, did, while the said defendant was such captain thereof, and while the said packet-boat did regularly perform trips, at stated periods, between the said places, the said United States mail being regularly conveyed, under the authority of the Post-Office Department, from one to the other of the said places, transport and convey, otherwise than in the mail, divers letters, packets, and packages of letters, to wit, ten letters, ten packets, and ten packages of letters, then and there being mailable matter, other than newspapers, &c.; and which said letters, packets, and packages of letters, did not, nor did any or either of them, have relation to any part of the cargo of the said packet-boat, from one to the other of the said places, from one to the other of which said places the United States mail was then and there regularly conveyed as aforesaid, under the authority of the Post-Office Department, contrary to the intent of the act; whereby the defendant did then and there forfeit, and became liable to pay the plaintiffs the sum of fifty dollars; by means whereof an action hath accrued to the plaintiffs to demand and have of and from the defendant the sum of fifty dollars.

To this declaration the defendant pleaded *nil debet*, to which the plaintiffs joined issue.

The cause coming on to be tried, the plaintiffs offered certain evidence set forth in the bill of exceptions, as follows:

Wallace Sherman, to whom it was objected on behalf of the defendant, that he was informer in the case, but the court overruled the objection.

The said witness was therefore examined in chief by the said United States Attorney, and testified, that he was clerk in the post-office at Albion, from about the middle of August, 1846, during all which time the mail was regularly carried under the authority of the Post-Office Department, between Albion and Rochester, New York, daily. H. I. Sickles was postmaster at Albion; that he had seen the defendant, and knew him by sight; that he believed he was captain of the packet-boat Empire, on the Erie Canal, in 1845, and part of 1846; that the packet-boat Em-

8*

pire, during the season of navigation, performed regular trips between Rochester and Buffalo; that Albion was on the canal between Rochester and Buffalo; that he had seen Kelsey, the steward of the boat; that he was steward of the boat while the defendant was captain; that he saw a letter or letters given to Kelsey in 1846, he thought in May; that it was while the defendant was captain, and while the boat was at Albion; Kelsey was the steward of the boat, which was going from Buffalo to Rochester; that he thought two letters were given to him, one by Brainard and one by Parmlee; that he did not know as any thing else was given to the steward; that he, the witness, was not far off; that he did not know whether both the letters were given to the steward at the same instant of time.

On cross-examination by the counsel for the defendant, this witness testified that this was between 10 and 11 o'clock at night; the boat did not stop at Albion over fifteen minutes; that on the occasion spoken of he and one White got on the boat; that he had seen the defendant on the boat Empire since that time; that he did not abandon the boat very early in 1846; that after the defendant quit, Kelsey run the boat as captain; that he, the witness, was not acquainted with Brainard, who was a tobacco peddler; Parmlee attended the bar at the Mansion House in Albion; the papers handed to the steward were folded in the shape and size of letters; he, the witness, did not know whether they were sealed or not; Kelsey got on the boat after he took the letters; they did not contain over one sheet of paper each.

On a reëxamination by the said United States Attorney, the witness testified, that he saw the report of the case by the postmaster to the United States Attorney. It is shown to and identified by the witness, who stated the report to be dated May 7, 1846.

William V. White was then called as a witness for the said United States, and testified that he resided at Brockport, and was at Albion in the spring of 1846, he thought in May, and stayed at Albion from dark until 10 or 11 o'clock the same night; and then went from Albion to Rochester in the packet-boat Empire, of which the defendant was the captain.

That the last witness, Sherman, came down to the wharf to see the witness off. That he, the witness, did not see any thing handed to the steward, or any hand on the boat. That he arrived at Rochester about 7 o'clock the next morning, and saw Kelsey, the steward, have something of paper, which he handed to a boy. That he did not see the size of the paper, or whether sealed or open. That he did not see from what part of his person the steward took the paper. That the boy to whom the

paper was delivered belonged to the boat; he thought there was no more than one paper, and that he should think they were folded. That he did not notice any writing on the papers. That this was almost half an hour after the boat arrived at Rochester. The said United States Attorney thereupon asked the said witness whether the said steward, when he gave the said papers to the boy, gave any directions to the boy in respect to said papers. And the said counsel for the said defendant did then and there object, and insist that the said question was improper, and that the said witness ought not to answer the same. And the said court did thereupon then and there decide, that the said question was incompetent, and that the same should not be answered by the witness; to which opinion and decision the said United States Attorney did then and there except.

On cross-examination, the said witness testified that he was with Sherman most of the time after nine o'clock of the evening of the transaction spoken of, until the packet-boat left Albion. That it was between the 1st and 15th of May, 1846. That the defendant was on the boat as captain that night.

James Brainard was then called and sworn as a witness on behalf of the United States, and testified that in May, 1846, he was at work peddling tobacco for Mr. Palmer; that he was at Albion every two weeks, and thought he was there in May; that he was there the forepart of the week, but did not recollect the time of the month; that he recollected offering Kelsey a letter at Albion to carry to Mr. Palmer, his employer, at Rochester, and Kelsey would not carry it, and said he was not permitted to carry letters. That this was in front of the hotel at Albion, at 10 or 11 o'clock at night; that he (the witness) kept the letter, and wrote an order on his employer for some tobacco, and gave it to Kelsey to carry; that he wrote it on a half sheet of paper, and wrote it half over and tore off the residue. That he folded it over the width of the sheet, and then once at right angles with the first fold, and directed it on the outside to Mr. Palmer, at Rochester. That the order to Mr. Palmer was a request to send some tobacco to him (the witness) at Albion, by the boat Empire, or by the first boat; and the witness thinks the request was to send it by the first boat; and this was the substance of the paper. That he did not give the steward any thing for carrying the letter. That he received the tobacco the next day. He found it at the hotel at Albion, when he came back from Berne Centre.

On cross-examination, this witness testified, that he supposed, when he wrote, that the Empire would be the first boat out of Rochester, after the receipt of the order by Palmer. That he told Palmer to send the tobacco by the first boat; that he paid nothing for bringing the tobacco.

James H. Palmer was then called and sworn, as a witness on behalf of the United States, and testified that he was the person of that name referred to in the testimony of the last witness, and had charge of the business of the firm at Rochester, for whom Brainard was peddling tobacco in May, 1846. That he frequently received orders from Brainard by mail and otherwise; that the orders were all destroyed; that he never sent tobacco to peddlers except upon orders, unless they requested it before they left Rochester.

On cross-examination, he testified that he recollected sending tobacco by the defendant's boat, in May, 1846, to Brainard.

William Parmlee was then sworn, and called as a witness on behalf of the United States, and testified that, in May, 1846, he attended bar for Mr. Hopkins, at Albion. That he did not recollect handing any paper or letter to Kelsey, to be carried by him, or for any other purpose; that he had offered letters to Kelsey to carry, and he refused to carry them; that he recollected seeing Brainard giving a note to Kelsey, written on two thirds of a sheet of foolscap paper, and folded in about the size of an ordinary letter, to be carried to Rochester.

On cross-examination, the witness testified that the boat Empire brought the tobacco from Rochester for Brainard; and he (the witness) paid the steward (Kelsey) half a dollar for bringing it, which Brainard afterwards repaid him.

Said Kelsey was then called as a witness for the said United States, and testified that in May, 1846, he was steward of the Empire. The defendant was captain of the said boat; that he recollected the circumstances spoken of by Brainard and Sherman; that Brainard came with a letter, and he (the witness) refused to take it; and that he soon afterwards brought the order spoken of, which he (the witness) took, and, when he arrived at Rochester, sent to Mr. Palmer, and received the tobacco and carried it to Albion, for which he received a half dollar, which was a perquisite of his own.

The said United States Attorney thereupon rested the said cause, and the counsel for the defendant did then and there ask the said judge to direct the said jury that the said evidence did not establish a cause of action against the said defendant; and that the said defendant, upon the said evidence, was entitled to a verdict; and the said judge did thereupon, then and there declare and decide, that the said evidence, so as aforesaid given, did not establish a cause of action against the said defendant; and that the said paper, carried and conveyed by the steward of the said boat, from Albion to Rochester, as aforesaid described by the witnesses, was not a letter or mailable matter within the meaning of tne act of Congress, but was a paper having a differ-

ent and distinct character of its own, and could be lawfully carried by the said steward of the packet-boat aforesaid; and did then and there, for the reason aforesaid, direct the said jury to find a verdict for the said defendant. To which said opinion and decision the said United States Attorney did then and there except; and the said jury did thereupon, in pursuance of the said opinion and decision, without leaving the box, find a verdict for the defendant.

The cause was afterwards removed by writ of error into the Circuit Court, when the judgment of the District Court was affirmed.

The United States then sued out writ of error and brought the case up to this court.

It was argued by *Mr. Crittenden*, Attorney-General, for the United States, and by *Mr. Sackett*, for the defendant in error.

*Mr. Crittenden* contended:

1. That, although the amount in controversy is under the sum of two thousand dollars, yet this court has jurisdiction, under the act of 31st May, 1844: "An act to amend the Judiciary act, passed the 24th September, 1789," whereby it is enacted, "that final judgments in any Circuit Court of the United States, in any civil action, brought by the United States, for the enforcement of the revenue laws of the United States, or for the collection of the duties due, or alleged to be due, on merchandise imported therein, may be reëxamined, and reversed or affirmed in the Supreme Court of the United States, without regard to the sum or value in controversy in such action, at the instance of either party." 5 Stat. at Large, 658. And that the laws relating to the revenue of the Post-Office Department are revenue laws, within the meaning of the above act. The act under which the suit is brought is entitled "An act to reduce the rates of postage, &c., and for the prevention of frauds on the revenue of the Post-Office Department." 5 Stat. at Large, 736. See also act of 3d March, 1845: "An act to change the organization of the Post-Office Department, and to provide more effectually for the settlement of the accounts thereof," particularly the first, third, twelfth, and forty-fifth sections. 5 Stat. at Large, et seq.

2. That the paper conveyed by the steward of the packet-boat Empire was a letter within the meaning of the statute. See testimony of Parmlee and Brainard.

1st. The law under which the suit was brought is a revenue law, and is to be liberally construed, so as to effect the intention of Congress. Taylor v. United States, 3 How. 197.

2d. A letter is a written nmunication from one person to

another; neither external direction, nor sealing, nor envelope, are essential to a letter.

3d. The paper in question being directed externally, was mailable matter; that is, had every requisite to enable it to be effectively transmitted by post.

4th. That here was an attempt to evade the statute. The steward rejected what he describes as a letter, but conveyed a paper with the same contents and direction. See Kelsey's testimony

*Mr. Sackett* contended:

1. This Court has no jurisdiction, less than $2,000 being in controversy.

The act of 31st of May, 1844, (5 Stat. at Large, 658,) giving to this court the right of review, on error, to a circuit court, in all " civil actions for the enforcement of the revenue laws of the United States," does not apply to the act under which this suit is brought. That act is a law to carry out the power vested in Congress in relation to post-offices and post-roads, and not a revenue act. Art. 1, sec. 8, of the Constitution.

The system of postages, established by that act, is not a system of revenue. It is a plan of compensation for the services of government in carrying the mails.

Revenue laws must be uniform. Sec. 8, Constitution. This law is but a graduated scale of rates charged for labor performed. Indeed, there is no power in Congress to convert its power " to establish post-offices and post-roads" into a revenue power. And though postages, however unequally levied, may incidentally produce revenue, they are not levied as revenue. Official fees of marshals, attorneys, &c., that go into the Treasury, may as well be claimed to arise from the taxing or revenue power.

But if this be held to be a revenue law, query, does the act of 31st of May reach suits for penalties for its violation? Such suits are not suits to enforce the law, but to punish for a breach of it.

2. The paper carried by Kelsey was not " mailable matter." It was not a letter, and there is no other specification of " mailable matter," except letters, by which this case is even supposed to be embraced. The parties acted sincerely, and, as they believed, lawfully. It is said, on the other side, that the same thing was contained in the order, that was in the destroyed letter. There is no proof of this; but if true it is of no legal consequence. The same word might have been sent verbally, and it would have been as much an evasion in one case as the other, so far as payment was concerned.

This paper was not a letter, a packet, or package; it was an

open request, a memorandum. To compel such papers to pass through the mails would be a most useless clog to business, and utterly derange the customs and conveniences of society. It is not intended by the post-office act to compel business into the mails, but only to prevent what naturally belongs to them from being drawn out by private hands. 5 Stat. at Large, 737, sec. 15.

3. If the paper carried was "mailable matter," standing alone, it was not so in its connection with the "cargo" of the boat. The act clearly contemplates that boats and vessels may do their own business in relation to their own cargo, whether on board or to be procured. This will be seen from the language of the act. The 10th section, in stating the exceptions, says, "except such as may have relation to some part of the cargo of such steamboat, packet-boat, or vessel, or to some article at the same time conveyed by the same stage-coach, railroad car, or other vehicle."

In fact, if vessels on lakes, rivers, and canals, are not to be permitted to carry memorandums or orders, in relation to their cargo, either on board or to be procured, they will suffer endless inconvenience. For instance, a boat is passing, and a shipper wishes "cargo" put on board a few miles ahead; the mail may not pass in three days; he wants to send by the boat an order to his agent to ship, under the rule contended for he cannot do it.

4. The act is a penal one, and must be construed strictly. Its penal character is very extraordinary. It makes the innocent pay the penalty for the guilty. So in this case.

Mr. Justice McLEAN delivered the opinion of the court.

This is a case on error, from the Circuit Court of the Northern District of New York.

An action of debt was brought in the District Court, under the tenth section of the act of the 3d of March, 1825, entitled "An act to reduce the rates of postage, &c., and for the prevention of frauds on the revenue of the Post-Office Department." It prohibits, under the penalties provided, any stage-coach, railroad car, steamboat, or other vehicle or vessel, or any of the owners, managers, servants, or crews of either, which regularly performs trips on a post-route, on which the mail is carried, from transporting letters, packages, or other mailable matter, except such as may have relation to some part of the cargo, or to some article at the same time conveyed in a stage or other vehicle.

The declaration charged the defendant Bromley, as the captain of the packet-boat Empire, which regularly performed trips

on the canal between Albion and Rochester, in the State of New York, on which line the mail was transported, under the authority of the Post-Office Department, with transporting, otherwise than in the mail, divers letters, packets, and packages of letters, then and there being mailable matter, other than newspapers, &c., not having relation to the cargo.

The defendant pleaded *nil debet,* and the plaintiffs joined issue.

Evidence was given to show that the defendant was captain of the boat Empire, which performed trips between the places stated, and that the mail was regularly conveyed on the same route in 1845 and 1846. That Brainard, one of the witnesses, gave a note to Kelsey, the steward of the boat, written on two thirds of a sheet of foolscap paper, and folded the size of an ordinary letter, with a direction upon it, to be carried to Rochester. That the letter was an order to Mr. Palmer for tobacco, which was sent by the return boat, and for which Kelsey, the bearer, received fifty cents.

The testimony being closed, the defendant prayed the judge to instruct the jury that it did not establish a cause of action against the defendant; and the judge instructed the jury that the paper conveyed by the steward of the boat, Kelsey, from Albion to Rochester, as sworn to by the witnesses, was not a letter or mailable matter, within the meaning of the act of Congress; but was a paper having a different and distinct character of its own, and could be lawfully carried by the said steward of the packet-boat aforesaid, and did therefore direct the jury to find for the defendant, which they did; and to which instruction the plaintiff excepted.

The cause was afterwards removed to the Circuit Court by writ of error, and by which court the judgment of the District Court was affirmed. This judgment of affirmance is now before us for revision.

This writ of error was issued under the act of the 31st. of May, 1844, entitled "An act to amend the Judiciary Act passed the 24th September, 1789, which provides that final judgments in any Circuit Court of the United States, in any civil action brought by the United States for the enforcement of the revenue laws of the United States, or for the collection of the duties due on merchandise imported therein, may be examined, and reversed or affirmed in the Supreme Court of the United States, without regard to the sum or value in controversy in such action, at the instance of either party."

That the act which prescribes the offence charged is a revenue law, there would seem to be no doubt. In its title, it is declared to be an act to reduce the rates of postage, and for the "pre-

vention of frauds on the revenue of the Post-Office Department." In its character and object it is a revenue law; as it acts upon the rates of postage and increases the revenue by prohibiting and punishing fraudulent acts which lessen it. Under the act of 1836, the revenue of the Post-Office Department is paid into the treasury. Revenue is the income of a State, and the revenue of the Post-Office Department, being raised by a tax on mailable matter conveyed in the mail, and which is disbursed in the public service, is as much a part of the income of the government as moneys collected for duties on imports.

We think the instruction of the court was erroneous. The letter or order, as it is called by some of the witnesses, was folded in the form of a letter and directed as such, though it was not sealed. A seal was not necessary to constitute it a letter or to make it chargeable with postage. The letter was not within the exception of the statute, as it did not relate to the cargo or to any article on board of the boat. It was an order for tobacco on Mr. Palmer, of Rochester, who was a dealer in that article. Among merchants, an order to the wholesale dealer for merchandise is a common subject of correspondence. And it may be doubted whether any other subject can be named on which more letters are written and forwarded in the mail. Two thirds of the half sheet which composed the letter was covered with writing, from which an inference may be drawn, that something more than a mere order for goods was requested by the writer. But an order for goods, folded and directed as a letter, is clearly mailable matter, and a conveyance of it, as charged, is a violation of the law.

The judgment of the Circuit Court is reversed, and the cause is remanded to that court for further proceedings, according to law.

### Order.

This cause came on to be heard on the transcript of the record, from the Circuit Court of the United States for the Northern District of New York, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed; and that this cause be, and the same is hereby, remanded to the said Circuit Court for further proceedings to be had therein, according to law.