## UNITED STATES *v.* NORTON.

1. The act entitled "An Act to establish a postal money-order system," approved May 17, 1864 (13 Stat. 76), is not a revenue law within the meaning of the act entitled "An Act in addition to the act entitled 'An Act for the punishment of certain crimes against the United States,'" approved March 26, 1804 (2 Stat. 290).

2. A person cannot be prosecuted, tried, or punished for the embezzlement of money belonging to the postal money-order office, unless the indictment shall have been found within two years from the time of committing the offence.

ON a certificate of division in opinion between the judges of the Circuit Court of the United States for the Southern District of New York.

The case was argued by *Assistant Attorney-General Edwin B. Smith* for plaintiff, and by *Mr. Abram Wakeman* for defendant.

MR. JUSTICE SWAYNE delivered the opinion of the court.

It appears by the record that Norton was indicted for the embezzlement at different times of money belonging to the

money-order office in the city of New York, he being a clerk in that office when the crimes were committed.

The indictment was found on the 21st of February, 1874. He pleaded "that the several offences did not arise, exist, or accrue within two years next before the finding of said indictment." To this plea the United States demurred. Upon the point thus presented as to the sufficiency of the plea the judges were divided in opinion.

The indictment was founded upon the eleventh section of the "Act to establish a postal money-order system," passed May 17, 1864. 13 Stat. 76.

The "Act for the punishment of certain crimes against the United States," of the 30th of April, 1790 (1 Stat. 119, sect. 32), declares, "Nor shall any person be prosecuted, tried, or punished for any offence not capital, nor for any fine or forfeiture under any penal statute, unless the indictment or information for the same shall be found or instituted within two years from the time of committing the offence or incurring the fine or forfeiture aforesaid."

The act of the 26th of March, 1804, "in addition to the act entitled 'An Act for the punishment of certain crimes against the United States,'" enacts (2 Stat. 290, sect. 3) "that any person guilty of crimes arising under the revenue laws of the United States, or incurring any fine or forfeiture by breaches of said laws, may be prosecuted, tried, and punished, provided the indictment or information be found at any time within five years after committing the offence or incurring the fine or forfeiture, any law or provision to the contrary notwithstanding."

The substantial question presented for our determination is, Which of these two provisions applies as a bar to a prosecution for the offences described in the indictment? The solution of this question depends upon the solution of the further question, whether the "Act to establish a postal money-order system" is a revenue law within the meaning of the third section of the act of 1804.

The offences charged were *crimes arising* under the money-order act. The title of the act does not indicate that Congress, in enacting it, had any purpose of revenue in view. Its object, as expressly declared at the outset of the first section, was "to

promote public convenience, and to insure greater security in the transmission of money through the United States mails." All moneys received from the sale of money-orders, all fees received for selling them, and all moneys transferred in administering the act, are "to be deemed and taken to be money in the treasury of the United States." The Postmaster-General is authorized to allow the deputy-postmasters at the money-order offices, as a compensation for their services, not exceeding "one-third of the whole amount of fees received on money-orders issued," and at his option, in addition, "one-eighth of one per cent upon the gross amount of orders paid at the office." He was also authorized to cause additional clerks to be employed, and paid out of the proceeds of the business; and, to meet any deficiency in the amount of such proceeds during the first year, $100,000, or so much of that sum as might be needed, was appropriated.

There is nothing in the context of the act to warrant the belief that Congress, in passing it, was animated by any other motive than that avowed in the first section. A willingness is shown to sink money, if necessary, to accomplish that object.

In no just view, we think, can the statute in question be deemed a revenue law.

The lexical definition of the term *revenue* is very comprehensive. It is thus given by Webster: "The income of a nation, derived from its taxes, duties, or other sources, for the payment of the national expenses."

The phrase *other sources* would include the proceeds of the public lands, those arising from the sale of public securities, the receipts of the Patent Office in excess of its expenditures, and those of the Post-office Department, when there should be such excess as there was for a time in the early history of the government. Indeed, the phrase would apply in all cases of such excess. In some of them the result might fluctuate; there being excess at one time, and deficiency at another.

It is a matter of common knowledge, that the appellative *revenue laws* is never applied to the statutes involved in these classes of cases.

The Constitution of the United States, art. 1, sect. 7, provides that "all bills for raising revenue shall originate in the House of Representatives."

The construction of this limitation is practically well settled by the uniform action of Congress. According to that construction, it "has been confined to bills to levy taxes in the strict sense of the words, and has not been understood to extend to bills for other purposes which incidentally create revenue." Story on the Const., sect. 880. "Bills for raising revenue" when enacted into laws, become *revenue laws.* Congress was a constitutional body sitting under the Constitution. It was, of course, familiar with the phrase "bills for raising revenue," as used in that instrument, and the construction which had been given to it.

The precise question before us came under the consideration of Mr. Justice Story, in the *United States* v. *Mayo,* 1 Gall. 396. He held that the phrase *revenue laws,* as used in the act of 1804, meant such laws "as are made for the direct and avowed purpose of creating revenue or public funds for the service of the government." The same doctrine was reaffirmed by that eminent judge, in the *United States* v. *Cushman,* 426.

These views commend themselves to the approbation of our judgment.

The cases of *United States* v. *Bromley,* 12 How. 88, and *United States* v. *Fowler,* 4 Blatch. 311, are relied upon by the counsel for the United States. Both those cases are clearly distinguishable, with respect to the grounds upon which the judgment of the court proceeded, from the case before us. It is unnecessary to remark further in regard to them.

It will be certified, as the answer of this court to the Circuit Court, that the indictment against Norton charges offences for which, under the limitation provided in the thirty-second section of the act of Congress approved April 30, 1790, entitled "An act for the punishment of certain crimes against the United States," the defendant cannot be prosecuted, tried, or punished, unless the indictment shall have been found within two years from the time of the committing of the offences; and that the indictment is not for crimes arising under the revenue laws, within the intent and meaning of the third section of the act approved March 26, 1804, entitled "An Act in addition to the act entitled 'An Act for the punishment of certain crimes against the United States.'"