TWIN FALLS CANAL CO., Limited, v. FOOTE et al.

(Circuit Court, D. Idaho, S. D. October 23, 1911.)

1. WATERS AND WATER COURSES (§ 222*)—RECLAMATION ACT—CONSTRUCTION OF WORKS BY UNITED STATES.

In the construction of works for the irrigation of arid public lands under Reclamation Act June 17, 1902, c. 1093, 32 Stat. 388 (U. S. Comp. St. Supp. 1909, p. 596), the United States is not exercising a governmental function nor even a strictly public function, but is promoting its pro-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

prietary interests, and such advantage as arises therefrom to the public at large is material, and not governmental.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 222.*]

2. REMOVAL OF CAUSES (§. 21*) — SUITS AGAINST OR FOR ACTS OF UNITED STATES OFFICERS—"REVENUE LAW."

. Reclamation Act June 17, 1902, c. 1093, 32 Stat. 388 (U. S. Comp. St. Supp. 1909, p. 596), by which the government advances the cost of rec- ' lamation works, and collects from purchasers of the lands benefited only sufficient to reimburse it for the expenditure, is not a "revenue law" within the meaning of Rev. St. § 643 (U. S. Comp. St. 1901, p. 521), which provides for the removal of suits brought in state courts "against any officer appointed under or acting by authority of any revenue law of the United States" on account of any act done under color of his office, and a suit against the officer in .charge · of reclamation work to determine water rights in a stream is not removable by him thereunder. Nor is there any reason of public policy why such suit should be transferred to · the federal courts, as by the terms of the act the rights of the government as an appropriator of water are governed by the laws of the state and are no greater than those of any other user.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§. 49, 51; Dec. Dig. § 21.*

For other definitions, see Words and Phrases, vol. 7, pp. 6209–6211.]

In Equity. Suit by the Twin Falls Canal Company, Limited, against Joseph C. Foote, Charles N. Foster, and others. On motion to remand to state court. Motion sustained.

A. M. Bowen and Cavanah & Blake, for plaintiff.

C. H. Lingenfelter, U. S. Dist. Atty., and B. E. Stoutemyer, for defendant Foster.

DIETRICH, District Judge. By this action the plaintiff, the owner of a large canal system diverting water from a natural stream and making distribution thereof to its several stockholders for the irrigation of their farms, seeks an adjudication of the conflicting rights of itself and other claimants to the flow of Snake river, and prays an injunction restraining other users from interfering with its rights. Proceeding under the authority of Act Cong. June 17, 1902, c. 1093, 32 Stat. 388 (U. S. Comp. St. Supp. 1909; p. 596), commonly known as the "Reclamation Act," the Secretary of the Interior has caused to·be constructed, and is .maintaining, a canal system diverting water from the Snake river at a point above the intake of the plaintiff's canal, and the defendant Charles N. Foster is the representative of the government in charge of this system, he having no other interest in the subject-matter of the litigation.

By section 643 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 521) it is provided that when any civil suit is commenced in a state court "against any officer appointed under or acting by· authority of any revenue law of the United States now or hereafter enacted, or against any person acting under or by authority of any such officer, on account of any act done under color of his office or of any such law or on account of any right, title or authority claimed by such officer or other person under any such law," such

suit may at any time before the final hearing thereof be removed for trial into the Circuit Court of the United States upon petition of such defendant. Foster, having been made a party defendant by supplemental proceedings, promptly filed a petition pursuant to this provision of law for the removal of the cause to this court, and, an ex parte order having been made granting the petition, the plaintiff now moves to remand. The petition is in due form and the removal is conceded to have been properly made, provided the reclamation act is held to be a "revenue law of the United States" within the meaning of the section referred to. The only question for consideration, therefore, is whether this act is a "revenue law."

Briefly abstracted, the act provides that, beginning with the fiscal year ending June 30, 1901, all moneys received from the sale of public lands in certain states, including the state of Idaho, with certain unimportant exceptions, shall be appropriated and set apart as a special fund to be known as the "reclamation fund," to be used for the construction and maintenance of irrigation works, for the storage, diversion, and development of waters for the reclamation of arid lands. Authority to administer the fund and to expend it under the law is vested in the Secretary of the Interior. He is empowered to direct surveys to be made, and, upon investigation and consideration, to take all the necessary steps for the construction of irrigating systems. And to that end he may withdraw public lands from entry under the general public land laws, and prescribe rules and regulations for their entry in accordance with the terms of the act. Upon the construction of such a system, he may give notice of the lands irrigable thereunder, and limit the area which any one person may enter. The act contemplates that the cost of constructing the canal system shall be ratably distributed to the lands irrigable thereunder, and persons entering such lands are, under the rules and regulations prescribed by the Secretary of the Interior, required to reimburse the government for its outlay in constructing the system; it being provided that the charges to entrymen shall be determined "with a view of returning to the reclamation fund the estimated cost of construction of the project and shall be apportioned accordingly." Obviously, as indicated in its title, the reclamation of the arid lands of the United States by rendering to settlers temporary assistance in procuring water for the irrigation thereof was the controlling motive for its passage. It was recognized that in executing plans for the irrigation of much of the public arid land individual effort would be inadequate, and that the government with its unlimited credit could undertake and successfully carry to completion projects, which, because of their magnitude and difficulties, private enterprise would hesitate to undertake. The government was neither to gain nor to lose by the enterprise, for in theory the entire cost of any given project is to be reimbursed by those who enter irrigable lands thereunder. It is clear that, in so far as it is a feature at all, revenue is an incident only, and not the primary purpose of the act, and it therefore follows that the act does not fall within the terms of section 7 of article 1 of the Constitution of the United States,

providing that "all bills for raising revenue shall originate in the House of Representatives." "Bills for raising revenue," it is generally thought, are such as "levy taxes in the strict sense of the word"; and the constitutional limitation "has not been understood to extend to bills for other purposes, which may incidentally create revenue." Story on the Constitution, § 880; United States v. Norton, 91 U. S. 566, 23 L. Ed. 454; Twin City Bank v. Nebeker, 167 U. S. 196, 17 Sup. Ct. 766, 42 L. Ed. 134; Millard v. Roberts, 202 U. S. 429, 26 Sup. Ct. 674, 50 L. Ed. 1090.

Upon behalf of the defendant, it is conceded that the bill for the reclamation act could not properly be classified as a bill "for raising revenue" within the meaning of the Constitution; but it is said the phrase, "revenue law," in the statutory sense, is not to be taken as the exact equivalent of the constitutional clause. But the reasons urged for drawing such a distinction, when analyzed, seem largely referable to the supposed desirability of a law conferring upon all officers of the national government the right to have certified to the federal courts all actions brought against them in the state court, a consideration that is more properly addressed to the legislative than to the judicial department of the government. It is conceded that section 643 does not extend its protection to all government officers, and we are therefore concerned with determining, not what may seem to be desirable, but what was the intention of Congress in enacting the law, and to what class or classes of officers it was intended to apply. It is, of course, possible to differentiate between a law "for raising revenue" and a "revenue law," but the distinction is not entirely obvious, and the two phrases might very properly be used to convey the same meaning. Lexically and grammatically, the strain comes, not in assimilating, but in distinguishing them. As language is commonly and ordinarily understood, it would seem that, when a bill "for raising revenue" is enacted into law, it becomes "a revenue law," and a "revenue law" originates in a bill "for raising revenue." It was expressly so held by Judge McDonald in The Nashville, Fed. Cas. No. 10,023, decided in 1868. True, the contention of the defendant in this respect is not wholly without support in the decided cases, notably that of the United States v. James, Fed. Cas. No. 15,-464. Upon the other hand, expressions from the highest authority seem to imply a different view. In United States v. Norton, 91 U. S. 566, 23 L. Ed. 454, the Supreme Court had under consideration the meaning, not of the constitutional limitation, but of the statutory phrase, "revenue laws of the United States." Reference in the opinion is made to the Constitution apparently for the purpose only of throwing light upon the meaning of the statutory language, and, after adverting to the proceeds arising from the sale of public lands and of public securities and the receipts of the Patent Office and the Post Office Department, the court says:

"It is a matter of common knowledge that the appellative 'revenue laws' is never applied to the statutes involved in these classes of cases. The Constitution of the United States (article 1, § 7) provides that 'all bills for raising revenue shall originate in the House of Representatives.' The construction of this limitation is practically well settled by the uniform action of

Congress. According to that construction, it 'has been confined to bills to levy taxes in the strict sense of the words, and has not been understood to extend to bills for other purposes which incidentally create revenue.' Story on the Const. § 880. 'Bills for raising revenue' when enacted into laws become revenue laws. Congress was a constitutional body sitting under the Constitution. It was, of course, familiar with the phrase 'bills for raising revenue,' as used in that instrument, and the construction which had been given to it."

If there is not in this language an express ruling, there is at least an apparent intimation that the statutory phrase is to be taken as a substantial equivalent of the constitutional clause. In this case, it is true, the court was not construing section 643, but it did have under consideration the meaning of the identical language upon which the present case turns, although found in another section of the statutes. It has not been urged and I have been unable to discover that there is anything in the origin or history of section 643 suggestive of the expansive meaning for which the defendant contends, or indicative of an intention on the part of Congress to attach to the phrase, "revenue laws," any unusual significance. If the decision may be said to have any relation to the emergency act of February 4, 1815 (3 Stat. 198, c. 31) it will be noted that the provision for removal found in that act is wholly confined to customs officers. Properly speaking, the main features of the section are traceable for their origin to section 3, Act March 2, 1833, c. 57, 4 Stat. 632. This act is entitled "An act further to provide for the collection of duties on imports." "It was passed in consequence of an attempt by one of the states of the Union to make penal the collection by United States officers within the state of duties under the tariff laws. It was recommended by President Jackson in a special message and passed in the Senate by a vote of 32 to 1 and in the House by a majority of 92." Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; 2 Richardson's Messages & Papers of the Presidents, p. 610. In its original form, therefore, the section is found in a "revenue law," purporting to relate exclusively to the collection of revenue arising from import duties. By section 50 of an act of June 30, 1864, entitled "An act to provide internal revenue to support the government," etc. (Act June 30, 1864, c. 173, 13 Stat. 225, 241), these provisions were extended to the protection of officers engaged in executing the internal revenue laws. On July 13, 1866, an act was passed, entitled "An act to reduce internal taxation," etc. (Act July 13, 1866, c. 184, 14 Stat. 98), section 67 of which substantially corresponds to section 643 of the Revised Statutes, and by section 68 of which section 50 of the act of 1864 was repealed. It thus appears that the provision had its origin and was always embraced in a law, the primary, if not the sole, purpose of which was to provide revenue for the support of the government, and hence a "revenue law" within the meaning of the constitutional limitation.

No decision has been found in which the precise question under consideration has been determined, nor for our guidance have we from an authoritative source a comprehensive and specific definition of the term "revenue" as used either in the Constitution or in the many statutes in which it is employed. In Twin City Bank v. Nebeker,

167 U. S. 196, 17 Sup. Ct. 766, 42 L. Ed. 134, Mr. Justice Harlan, referring to the constitutional provision, uses the following language:

"What bills belong to that class (for raising revenue) is a question of such magnitude and importance that it is the part of wisdom not to attempt by any general statement to cover every possible phase of the subject."

In several suits against officers of the government engaged in the postal service, the meaning of the phrase, "revenue laws," has been the subject of consideration, and upon certain of these decisions the defendant places his chief reliance. That there is some analogy between the reclamation and the postal service may be conceded, but that there are also marked distinctions cannot be denied. In Public Clearing House v. Coyne, 194 U. S. 497, 506, 24 Sup. Ct. 789, 792, 48 L. Ed. 1092, the Supreme Court speaks of the Post Office Department as "a public function assumed and established by Congress for the general welfare, and in most countries its expenses are paid solely by the persons making use of its facilities; *and it returns, and is presumed to return, a revenue to the government, and really operates as a public and efficient method of taxation.*" In such a view, the Post Office Department bears little resemblance to the reclamation service. No one would pretend that the latter either in theory or in practice "operates as a public and efficient method of taxation." But if, in respect to the revenues of the government, the status of the reclamation service and of the Post Office Department be assumed to be identical in law, the question under consideration is not foreclosed, for the status of the postal laws themselves is not by the decided cases put beyond controversy. Those cited by the defendant in support of his position are Warner v. Fowler, 29 Fed. Cas. 255; Ward v. Congress Construction Co., 99 Fed. 598, 39 C. C. A. 669; U. S. v. Bromley, 53 U. S. 88, 13 L. Ed. 905. The Warner Case, decided in 1859, was brought in a state court within the Southern District of New York against a postmaster for his alleged wrongful refusal to deliver a letter to the plaintiff. By District Judge Ingersoll the case was held removable to the United States Circuit Court under the third section of the act of 1833, although, as we have seen, that act was entitled "An act to provide for the collection of duties on imports." But an entirely different view of the scope of this act is taken by District Judge Shipman in Victor v. Cisco, 28 Fed. Cas. 1177, a case arising in the same district and decided in 1862, and by District Judge Benedict in Stevens v. Mack, 23 Fed. Cas. 20, the case also arising in the Southern District of New York and decided in 1867. In this latter case it was expressly held that the act of 1833 had no application even to internal revenue laws and related exclusively to import duties. The same view by Circuit Judge Woodruff in the Northern District of New York was expressed in Benchley v. Gilbert, Fed. Cas. No. 1,291, decided in 1871. Each of the cases clearly negatives the theory that officers in the postal service could invoke the protection of section 3 of the act. And in City of Philadelphia v. The Collector (Diehl) 72 U. S. 720, 18 L. Ed. 614, referring to the several acts of 1833, 1864, and 1866, Mr. Justice Clifford,

delivering the opinion of the Supreme Court, uses the following language:

"Undoubtedly the original act of 1833 was passed for the protection of officers of the revenue, and persons acting under them, charged by law with the collection of import duties, and the first proviso in the sixty-seventh section of the act of the thirteenth of July, 1866, expressly enacts that the original act shall not be so construed as to apply to cases 'arising under any of the internal revenue acts, nor to any case in which the validity or interpretation of those acts shall be in issue.' The effect of that proviso is to limit the scope of the original act, without repealing it, to cases arising under the acts of Congress providing for the collection of import duties, and to confine its operation to the purposes for which it was originally passed."

In this connection it should be remarked that the force of this language is apparently weakened by expressions found in Insurance Company v. Ritchie, 72 U. S. 541, 18 L. Ed. 540 (decided at the same term), and by the comments of Mr. Justice Miller in Peyton v. Bliss, Fed. Cas. No. 11,055, decided a year later, it being expressly held by him that the third section of the act of 1833 extended to laws imposing direct taxes.

In Ward v. Congress Construction Co., the second case relied upon by the defendant, the plaintiff sought to enjoin the construction company from proceeding with the erection of a post office building. The construction company was acting under and carrying out a contract with the Secretary of the Treasury. Upon petition of the defendant, the case was certified from the state court to the United States Circuit Court under section 643, and the removal was sustained by the Circuit Court of Appeals both in the majority decision and in the concurring opinion by Judge Seaman. While the Fowler Case together with other cases is cited, it is not made to appear that the conclusion of the majority is based to any extent upon the fact that the defendant company was engaged in the construction of a post office building or that the fact that the building was to be used as a post office was a material consideration. Perhaps some light upon the reasons for the conclusion of the court may be found in the brief statement in the concurring opinion, to the effect that the test of the jurisdiction of the federal court was:

"That the Secretary of the Treasury by whom the work was ordered was an officer administering the revenue laws of the United States, 'acting under color of his office,' and not that the act in question related to the 'raising of revenues.'"

The act against which the injunction was sought was in effect the act of the Secretary of the Treasury, for the work was being done under his direction, and above all others the Secretary of the Treasury is charged with the administration of the "revenue laws of the United States."

The other case cited upon behalf of defendant is United States v. Bromley, decided by the Supreme Court in 1851. Neither in its present nor in its original form was section 643 involved. An action of debt was brought by the United States in the federal court to recover a penalty from the defendant Bromley for carrying mail matter in violation of Act March 3, 1845, c. 43, 5 Stat. 732, entitled

"An act to reduce the rates of postage, etc., and for the prevention of frauds on the revenue of the post office department." It will be noted that by its title the act is designated as a revenue measure. The verdict was for the defendant in the District Court where it was tried, and, there being an affirmance in the Circuit Court, a review was sought by the government in the Supreme Court under Act May 31, 1844, c. 31, 5 Stat. 658, providing that a judgment in any Circuit Court in a civil action brought by the United States "for the enforcement of the revenue laws of the United States" could be re-examined in the Supreme Court without regard to the value of the matter in controversy. Its jurisdiction being called into question, the Supreme Court said:

"That the act which prescribes the offense charged is a revenue law there would seem to be no doubt. In its title it is declared to be an act to reduce the rates of postage, and for the 'prevention of frauds on the revenue of the Post Office Department.' In its character and object it is a revenue law, as it acts upon the rates of postage and increases the revenue by prohibiting and punishing fraudulent acts which lessen it. Under the act of 1836, the revenue of the Post Office Department is paid into the treasury. Revenue is the income of a state, and the revenue of the Post Office Department, being raised by a tax on mailable matter conveyed in the mail, and which is disbursed in the public service, is as much a part of the income of the government as moneys collected for duties on imports."

It will be borne in mind that in using this language the court was not construing section 643 or a kindred statute, but an entirely different act relating to the appellate jurisdiction of the court; and it must be admitted that there is little analogy between the provisions of the reclamation act involved in this suit, and a law for the "prevention of frauds upon the revenue of the Post Office Department." Moreover, in the light of subsequent decisions, the case cannot be regarded as authority for the view that postal laws generally are "revenue laws." In United States v. Norton, 91 U. S. 566, 23 L. Ed. 454, decided in 1875, and to which reference has already been made, the defendant was indicted under the eleventh section of an "act to establish a postal money order system," passed May 17, 1864 (Act May 17, 1864, c. 87, 13 Stat. 76). The period of limitations for the prosecution of criminal offenses as prescribed by general statute was two years, but by Act March 26, 1804, c. 40, § 3, 2 Stat. 290, it was provided that in the case of "crimes under the revenue laws of the United States" an indictment could be brought any time within five years. Whether or not the action was barred, therefore, depended upon the answer to the question whether the "act to establish a postal money order system" was a "revenue law." Provision is made by the act for charging fees for issuing money orders, all of which were to be covered into the treasury of the United States, and generally the law was to be administered through the Post Office Department. Undoubtedly, therefore, the money order service became a part of the general postal system, and the income derived from the service in the form of fees became a part of the revenue of the United States. And yet it was said:

"In no just view, we think, can the statute in question be deemed a revenue law. The lexical definition of the term 'revenue' is very comprehensive.

It is thus given by Webster: 'The income of a nation, derived from its taxes, duties, or other sources, for the payment of the national expenses.' The phrase 'other sources' would include the proceeds of the public lands, those arising from the sale of public securities, the receipts of the Patent Office in excess of its expenditures, and those of the Post Office Department, when there should be such excess as there was for a time in the early history of the government. Indeed, the phrase would apply in all cases of such excess. In some of them the result might fluctuate; there being excess at one time, and deficiency at another. It is a matter of common knowledge that the appellative 'revenue laws' is never applied to the statutes involved in these classes of cases. The Constitution of the United States, art. 1, § 7, provides that 'all bills for raising revenue shall originate in the House of Representatives.' The construction of this limitation is practically well settled by the uniform action of Congress. According to that construction, it 'has been confined to bills to levy taxes in the strict sense of the words, and has not been understood to extend to bills for other purposes which incidentally create revenue.' Story on the Const. § 880. 'Bills for raising revenue,' when enacted into laws, become revenue laws. Congress was a constitutional body sitting under the Constitution. It was, of course, familiar with the phrase 'bills for raising revenue,' as used in that instrument, and the construction which had been given to it. The precise question before us came under the consideration of Mr. Justice Story in the United States v. Mayo, 1 Gall. 396 [Fed. Cas. No. 15,755]. He held that the phrase 'revenue laws,' as used in the act of 1804, meant such laws 'as are made for the direct and avowed purpose of creating revenue or public funds for the service of the government.' The same doctrine was reaffirmed by that eminent judge in United States v. Cushman, 2 Sumn. 426 [Fed. Cas. No. 14,908]. These views commend themselves to the approbation of our judgment. The cases of United States v. Bromley, 12 How. 88 [13 L. Ed. 905], and Warner v. Fowler, 4 Blatchf. 311 [Fed. Cas. No. 17,182], are relied upon by the counsel for the United States. Both those cases are clearly distinguishable, with respect to the grounds upon which the judgment of the court proceeded, from the case before us. It is unnecessary to remark further in regard to them."

It has been suggested that, being a criminal prosecution, the Norton Case can be distinguished under the rule of strict construction in favor of liberty, but there is no intimation in the opinion of the court that the conclusion reached involved any such consideration.

United States v. Hill, 123 U. S. 681, 8 Sup. Ct. 308, 31 L. Ed. 275, was an action brought upon the official bond of a clerk of the United States District Court to recover for fees coming into his hands and not properly accounted for. The verdict being for defendants, judgment of dismissal was entered, and to reverse this judgment a writ of error was sued out. There was a motion to dismiss upon the ground that the matter in dispute did not exceed $5,000. The government, however, relied upon the same provision of law under which jurisdiction was entertained in the Bromley Case; that is, the provision conferring jurisdiction to review any judgment of a Circuit Court entered in a civil action "for the enforcement of any revenue law," regardless of the amount in controversy. After referring to the statutes fixing the compensation of clerks and defining the jurisdiction of federal courts, the following language is used:

"This clearly implies that the term 'revenue law,' when used in connection with the jurisdiction of the courts of the United States, means a law imposing duties on imports or tonnage, or a law providing in terms for revenue; that is to say, a law which is directly traceable to the power granted to Congress by section 8, article 1, of the Constitution, 'to lay and collect taxes, duties, imposts and excises.' "

In Bryant Bros. v. Robinson, 149 Fed. 321, 79 C. C. A. 259, the plaintiff sought to enjoin the defendant Robinson, the postmaster at Dallas, Tex., from enforcing what is commonly known as a "fraud order" denying to plaintiffs the usual postal facilities. Judge Shelby, delivering the opinion of the Circuit Court of Appeals for the Fifth District, said:

"The cause was properly removable under this section (643) if the postmaster can properly be called an 'officer appointed under or acting by authority of any revenue law of the United States.' * * * There is no decision of the Supreme Court decisive of the question as to whether this cause is removable under section 643."

After reviewing the authorities and quoting at length from the Bromley decision, it was said:

"This language (from the Bromley Case) strongly indicates that postal laws may be revenue laws within the meaning of section 643, but the expressions we have quoted from United States v. Hill, supra, may point to a different conclusion."

Other cases touching the meaning of the phrase, "revenue laws," as the same is used in divers connections, may be briefly noticed. In United States v. James, Fed. Cas. No. 15,464, the question for determination was whether postal laws were measures "for raising revenue" in the constitutional sense. The answer was in the negative, but incidentally in distinguishing Warner v. Fowler the views therein expressed as to the scope of section 643 were approved. In United States v. Mayo, Fed. Cas. No. 15,755, Story, Circuit Justice, having under consideration the phrase found in the third section of an act of March 26, 1804, providing that any "persons guilty of any crime arising under the revenue laws of the United States may be prosecuted," etc., said:

"The true meaning of 'revenue laws' in this clause is such laws as are made for the direct and avowed purpose of creating and securing revenue or public funds for the service of the government. No laws, whose collateral and indirect operation might possibly conduce to the public or fiscal wealth, are within the scope of the provision."

For a similar view, see, also, opinion of Justice Story in Parsons v. Hunter, Fed. Cas. No. 10,778. In Peyton v. Bliss, Fed. Cas. No. 11,055, Mr. Justice Miller, while broadly construing the third section of an act of 1833, said:

"Any law which provides for the assessment and collection of a tax to defray the expenses of the government is a revenue law. Such legislation is commonly referred to under the general term 'revenue measures,' and those measures include all the laws by which the government provides means for meeting its expenditures."

Benchley v. Gilbert, Fed. Cas. No. 1,291, a case brought to recover fees paid to a court commissioner, was held to be not removable under section 67 of the act of 1866. In The Nashville, Fed. Cas. No. 10,023, Judge McDonald, having under consideration the phrase, "revenue laws," as used in Act July 18, 1866, c. 201, 14 Stat. 178, said:

"Counsel for libel argue that all acts of Congress regulating commerce, and navigation, and the carriage of passengers by water, are revenue laws, as they all, more or less, incidentally touch the interests of the United States

treasury. * * * But I cannot assent to this logic. I think it is too subtle. The thread of the argument is 'long drawn out,' and very attenuated. To me it appears that the obvious meaning and common sense of the thing is that the eighth section of the act of July 18, 1866, in employing the phrase, 'revenue laws' intended those laws—and those only—which upon their face are plainly designed to raise revenue. The act on which this libel is founded was evidently not passed with any such design. Its sole design clearly was the protection of the persons and lives of steamboat and steamship passengers."

In Campbell v. James (C. C.) 3 Fed. 513, it was held that the phrase, "other officers of the revenue," in section 989 of the Revised Statutes (U. S. Comp. St. 1901, p. 708), does not embrace postmasters.

In People's United States Bank v. Goodwin and Fulton (C. C.) 162 Fed. 937, the plaintiff sought to recover damages from the defendants, one of whom was the Assistant Attorney General for the Post Office Department and the other a post office inspector, for libel. The alleged wrongful acts were committed by defendants in their official capacity and while engaged in the administration of the postal laws. Removal of the suit from the state court, where it was commenced, into the United States Circuit Court, was sought under the provisions of section 643. Jurisdiction was declined. District Judge Trieber, after a painstaking and elaborate review of the statutes and the decided cases, including those here relied upon by defendant, used the following very pertinent language:

"If the fact that some acts of the officers of a department performed in pursuance of an act of Congress result in the collection or receipt of moneys which must necessarily be paid into the Treasury of the United States, and thereby become available for the payment of the governmental expenses, makes that department and all the officials under it persons acting under 'the revenue laws' of the United States within the meaning of section 643, it is hard to imagine a case against any officer of the United States which would not be removable under that section. Officers of the judicial department, clerks and marshals, collect all fines and penalties imposed under the criminal laws of the United States. The marshals of the United States collect fees for their services from litigants, and all these moneys, whether collected for fines and penalties or fees for services performed by these officers, are required to be paid into the national treasury, and are, of course, available and used for defraying the expenses of the government under the appropriation acts of Congress. The Department of the Interior is charged with the sale of the public lands and the collection of all revenues arising from the public domain. The War and Navy Departments are authorized to sell many articles when they cease to be of further use for the purposes of these departments. The Department of Commerce and Labor collects certain fees in naturalization cases, and all these moneys are required by law to be paid into the treasury to be used in the same manner as moneys collected under the revenue laws. Do these facts make all the officials and employés of those departments officers acting under 'the revenue laws' of the United States within the meaning of section 643? The mere statement of these facts is a conclusive answer to the defendants' contention."

The case was carried to the Supreme Court, but was not there submitted upon the merits. 218 U. S. 691, 31 Sup. Ct. 224, 54 L. Ed. 1211.

The correctness of the proposition upon which great stress is laid by the defendant that it is vital to the existence of the government that it should have the power to protect its revenue is indisputable. So, also, all question concerning the power of Congress to authorize

controversies touching public revenues to be removed into the federal courts has long since been set at rest. But, as has already been suggested, we are engaged in an inquiry, not as to what might wisely or properly be done, but as to what has been done. And in reasoning from probabilities concerning the intent or purpose with which Congress enacted section 643 and passed the reclamation act it must be borne in mind that the latter act has no vital relation to the existence of the government. The storage of water for irrigation purposes or the reclamation of arid lands is not, accurately speaking, a governmental function, and is not "a necessary part of civil government in the same sense in which the protection of life, liberty and property, the defense of the government against insurrection and foreign invasion, and the administration of public justice, are." The government, being possessed of large tracts of arid land, which without irrigation are practically worthless, in pursuance of a wise policy, as we think, is, under the reclamation act, engaged in reclaiming them, to the end that they may become marketable and ultimately fruitful.

[1] In prosecuting such an enterprise, however, it is not primarily performing a governmental; or, strictly speaking, even a public function, but is promoting its proprietary interests. Such advantage as arises therefrom to the people at large is material and not governmental, and is only such as might indirectly accrue to the public from the reclamation of an equal amount of land through private enterprise. Kansas v. Colorado, 206 U. S. 46, 92, 27 Sup. Ct. 655, 51 L. Ed. 956; United States v. Hanson, 167 Fed. 881, 93 C. C. A. 371; United States v. Burley (C. C.) 172 Fed. 615, Id., 179 Fed. 1, 102 C. C. A. 429.

[2] It will further be borne in mind that the subject-matter of this action is not, directly, at least, the right to collect dues or enforce contracts, but to use the flow of a certain stream of water. This right of the government, such as it possesses, is of the same quality, and is derived from the same sources and rests upon the same basis as that of the plaintiff or any other claimant. Not in its sovereign, but in its proprietary capacity, as the owner of arid lands, it acquired such right, by complying with the laws of the state governing the appropriation and use of water for beneficial purposes. Congress was careful to make clear its intent in this respect, for, by section 8 of the act, it declared:

"That nothing in this act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any state or territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any state or of the federal government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof: Provided, That the right to the use of water acquired under the provisions of this act shall be appurtenant to the land irrigated, and beneficial use shall be the basis, the measure, and the limit of the right."

In acquiring the right, therefore, and in using it, the Secretary of the Interior is not authorized to act independently of, but is directed to proceed in conformity with and subject to, the laws of the state,

and there can be no implication that Congress intended that all controversies touching a right thus acquired and held under the state laws should be withdrawn from the state courts. The plaintiff is not seeking to restrain the defendant from collecting water rents or water dues, or from enforcing any contracts that have been made for the payment of money. The only substantive relief sought is the adjudication of conflicting claims to certain water, a judicial determination of the extent, and the dignity of the rights of the several parties to the flow of Snake river. The right not having been conferred upon the Secretary of the Interior by the reclamation act, but having been acquired by him through a compliance with the statutes of the state, in adjudicating the controversy herein involved, the court exercising jurisdiction, whether it be a state or a federal tribunal, will be under the necessity of construing and applying the statutes, not of the national government, but of the state. In that view, no presumption, to say the least, arises that, if the matter were brought to the attention of Congress, it would advisedly authorize the removal of all such controversies into the federal court. (To what extent, if at all, a suit against the defendant Foster as a representative of the government locally in charge of the irrigation project will avail the plaintiff in procuring relief in any wise binding upon the government, is a question with which, it is apparently assumed, we are not presently concerned, and no opinion is expressed thereon.)

Without further elaboration, my conclusions may be briefly summarized as follows: (1) Unquestionably, the reclamation act is not a measure "for raising revenue" in the constitutional sense. (2) It is not clear, and there is no decisive ruling to the effect, that the phrase, "revenue laws," as used in section 643, is more comprehensive than the constitutional clause, "bills for raising revenue." (3) However that may be, "revenue law," as the phrase is ordinarily understood, does not aptly describe the reclamation act. Construction is required. (4) There is nothing either in the history of section 643 or in the conditions conducing to its enactment from which it is to be inferred that Congress intended to attach to the phrase, "revenue laws," any unusual significance or give to it a meaning beyond that which it is ordinarily understood to convey. (5) The reported cases are wholly indecisive of the question. (6) There is nothing in the reclamation act from which it can be inferred that Congress intended it as a revenue measure or from which the presumption arises that Congress purposed that controversies like the one here involved should be brought within the exclusive cognizance of federal courts. (7) In view of these several considerations, it is concluded generally that the reclamation act cannot properly be held to be a "revenue law" within the meaning of section 643.

The question may not be entirely free from doubt, but we are admonished that, in cases where our jurisdiction is subject to substantial doubt, it should not be exercised. Johnson v. Wells Fargo & Co. (C. C.) 98 Fed. 3; Bryant Bros. Co. v. Robinson, 149 Fed. 321, 327, 79 C. C. A. 259.

Accordingly, the motion to remand will be allowed.