Request of the Senate,
No. 4747.

OPINION OF THE JUSTICES.

Submitted May 1, 1959.

Answer returned May 5, 1959.

The following resolution was adopted by the Senate on April 15, 1959:

"WHEREAS, there is now pending before the General Court Senate Bill No. 66, An Act relative to fees for licenses for pharmacies and pharmacists, and

"WHEREAS, a question has been raised concerning its constitutionality on the grounds that the Honorable Senate, by originating this bill and its consequent passage of same, violated the provisions of Article 18, Part II of the Constitution, therefore be it

"RESOLVED, That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions:

(1) Is such origin and enactment by the Honorable Senate of a bill establishing or increasing fees in violation of Article 18, Part II of the Constitution?

(2) Is the raising of fees as provided in said bill a "money bill" under the provisions of Article 18, Part II of the Constitution?"

On April 16, 1959, the House adopted a resolution requesting the Justices "not to honor the request of the Senate." At the request of the House the consideration of this advisory opinion was delayed until May 1, 1959, in order to allow the House an opportunity to file a memorandum in support of its position by that date.

The following answer was returned:

*To the Honorable Senate:*

The undersigned Justices of the Supreme Court submit the following answers to the inquiries contained in your resolution

dated April 15, 1959, relating to Senate Bill No. 66, as amended entitled "An Act relative to fees for licenses for pharmacies and pharmacists." Senate Bill No. 66 amends RSA ch. 318 by making nominal increases in certain fees for licenses and permits for both pharmacies and pharmacists. Since this bill would increase the amount of money that the State receives in fees, you have requested our opinion as to whether such a bill may originate in the Senate consistently with Part II, Article 18th of the Constitution of New Hampshire, which reads as follows: "[Money Bills to Originate in House.] All money bills shall originate in the house of representatives; but the senate may propose, or concur with, amendments, as on other bills."

Article 18th of our Constitution is identical in wording with the earlier Massachusetts Constitution which has been interpreted by the Massachusetts Supreme Judicial Court to apply only to bills imposing a direct tax on the people. *Opinion of the Justices*, 126 Mass. 557. In 1901 we placed the same interpretation on our own Constitution in *Opinion of the Justices*, 70 N. H. 642, wherein it was stated that the Senate was entitled to originate any legislation which does not impose a direct tax on the people. Money bills, as used in the constitutional provision, refer to bills which raise money by direct taxation, and such money bills must originate in the House of Representatives. However, all other bills, even though they carry an appropriation, may originate in either the House of Representatives or the Senate. The most recent authority for this proposition is found in the 1958 *Opinion of the Justices*, (Mass.) 152 N. E. (2d) 90.

It is significant that Article I, section 7 of the Constitution of the United States has been similarly interpreted. *United States v. Norton*, 91 U. S. 566; *Twin City Bank v. Nebeker*, 167 U. S. 196; *Millard v. Roberts*, 202 U. S. 429. It is apparent from these decisions that money bills or bills for raising revenue are confined to bills which levy taxes in the strict sense of the word, and do not apply to bills which incidentally raise revenue or involve appropriation of state money. This limited and strict construction of the constitutional requirement that money bills or bills for raising revenue shall originate in the lower house is supported by the overwhelming weight of authority. Anno. 4 A. L. R. (2d) 973. The same conclusion was reached in *Questions and Answers*, 133 Me. 537, where it was considered well settled that a bill increasing hunting and fishing license fees did not have to originate

in the House. This construction of money bills in the constitutional sense is supported by more than a century of historical precedent which has been followed in this state and the great majority of the other states of the Union. *Mikell* v. *Philadelphia School District*, 359 Pa. 113; 1 Sutherland, Statutory Construction (3d *ed.*) *s.* 806. Cooley, Constitutional Limitations (7th *ed.*) *p.* 188; Crawford, Statutory Construction, *s.* 35.

The provisions of Senate Bill No. 66 would appear to be within the ambit of regulatory police power legislation enacting license fees which have been almost uniformly classed as bills which are not required to originate in the lower house. "Regulatory acts imposing license fees enacted in the exercise of the police power, in which the only income-producing feature is incidental to the main purpose of the regulation of the business therein described, and the enforcement thereof are not bills for 'raising revenue' within the meaning of the constitutional provision requiring revenue bills to originate in the lower house." Anno. 4 A. L. R. (2d) 973, 981; *Questions and Answers*, 133 Me. 537.

Accordingly, both of your inquiries are answered in the negative, and you are advised that Senate Bill No. 66, as amended, is not a money bill and if it becomes law will not violate Article 18th of our Constitution for the reason that it originated in and was enacted by the Senate.

Subsequent to this request of the Senate for an advisory opinion, we received a resolution of the House of Representatives which requested "the Honorable Justices of the Supreme Court . . . not to honor the request of the Senate." The resolution referred to a ruling by the Speaker of the House that Senate Bill No. 66 was a money bill and therefore must originate in the House of Representatives as provided by Article 18th, Part II, of the Constitution, which ruling was upheld by the House.

Part II, Article 74 of the Constitution as amended in 1958, provides that each branch of the Legislature shall have authority to require the opinions of the Justices of the court upon important questions of law and upon solemn occasions. Under this article either the House or the Senate has independent authority to request such advisory opinions and the duty of the Justices to return their answers does not depend upon consent or approval of the other branch of the Legislature. Consequently in answering the inquiry of the Senate in this opinion we have followed the express provisions of our Constitution.

In the legislative process either branch of the Legislature has the prerogative not to concur in the action of the other (N. H. Const., Pt. II, *Art.* 2d); and the reasons for refusing to concur are not subject to judicial scrutiny. See also, N. H. Const., Pt. II, *Art.* 23d; Luce, Legislative Problems, *c.* XIV. Moreover, nothing in this opinion is intended to affect or detract from the power of the House to "settle the rules of proceedings in their own house" under Part II, *Art.* 22d of the Constitution of New Hampshire. *Petition of Dondero,* 94 N. H. 236. See Journal of the House (1957) *p.* 1427.

FRANK R. KENISON.
LAURENCE I. DUNCAN.
AMOS N. BLANDIN, JR.
EDWARD J. LAMPRON.
STEPHEN M. WHEELER.

May 5, 1959.

*Louis C. Wyman,* Attorney General, and *Warren E. Waters,* Deputy Attorney General, for negative answers.

*Paul A. Rinden,* Senate counsel, also for negative answers.

*Stewart Lamprey,* Speaker of the House of Representatives, *R. Wayne Crosby,* Chairman of House Judiciary Committee, and *John W. King,* Representative of Manchester, for affirmative answers.