## Pledge of Liquor Store Profits

MARGIOTTI, Attorney General, July 28, 1936.—You inquire whether any profits accruing from the State liquor stores system in excess of the amount of such profits heretofore budgeted may be made the subject of further appropriation at this special session and pledged as security for tax anticipation notes secured by such excess profits. This inquiry arises by virtue of the fact that profits of the State liquor stores have to date exceeded the estimates for the biennium.

The Act of June 22, 1935, P. L. 442, in authorizing the issuance of $50,000,000 in tax anticipation notes against the current revenues for the biennium 1935-1937, expressly pledged the current revenues for such period for the repayment of such notes by paragraph (c) of Section 2 of such act, which reads as follows:

"The current revenues of the biennial fiscal period beginning the first day of June, one thousand nine hundred thirty-five, are pledged for the payment of principal and interest of such notes, which shall be payable in lawful money of the United States."

This was expressly pointed out by this department in Payment of Tax Anticipation Notes, 24 D. & C. 275, 278, as follows:

"As we have stated above, in the act here under consideration, the current revenues of every kind or character are specifically pledged to repay the notes and must be allocated for that purpose."

The act does not pledge estimates. It pledges current revenues, and this means all revenues anticipated by the original budget to accrue during the biennium, whether beyond or below estimates.

It must be borne in mind that an estimate is in fact only a prediction and that prediction may fail either by being too high or too low. No estimate of revenue can ever be guaranteed as accurate. In times of prosperity, it is likely to be too conservative. In times of depression, it is likely to be too optimistic. It is also true that the mere fact that revenue for part of a fiscal period exceeds in proportion the amount that was estimated does not necessarily justify the conclusion that such excess will continue, or that the estimated yield may not fall below that which was anticipated for the balance of the period. Likewise, the excess beyond expectation of certain items of revenue may be necessary to offset the deficiencies in other items which might fall below expectations. Therefore, it follows that any excess yield from any item of current revenue over and above the original estimate for such item will necessarily remain pledged for the payment of the principal and interest of the 1935 tax anticipation note issue until the sinking fund requirements of such issue are met in full.

Your inquiry resolves itself into the question whether the proceeds from the State liquor stores system form part of the current revenues of the Commonwealth, even though such proceeds accrue to the Commonwealth by virtue of profits on liquor sold to the public instead of through a tax levied and assessed.

If the answer to this question should be in the negative, then obviously none of the profits of the State liquor stores, including those within the limits of the original budget estimate yield, would be pledged for repayment of

the 1935 tax anticipation notes, despite the fact that such income was considered in making up the budget for the current biennium. Accordingly, any suggestion that the anticipated excess profits from the State liquor stores system over and above the original estimates are available as security for further tax anticipation notes is paradoxical for the reason that it breaks up profits from the liquor stores into two classes: Those within the original estimated yield as current revenue and those in excess of the original estimated yield as some other species of income but not current revenue. This suggestion attributes to liquor store profits a peculiar chameleon-like nature, making them change their color and character completely as soon as they go beyond the original budget estimate. If such a proposition were sound, it could, with the same force, be applied to any excess in revenue beyond the original estimate from any source such as from the cigarette tax or other taxes levied and assessed during the current biennium.

Are profits from the State liquor stores system current revenues of the Commonwealth?

In Georges Twp. v. Union Trust Co., 293 Pa. 364, 369 (1928), the Supreme Court, in construing the debt provision of our Constitution relating to municipalities, defines the term "current revenues" at page 369 as follows:

"Current revenues include taxes for the ensuing year and all liquid assets, such as delinquent taxes, licenses, fines and other revenues which, in the judgment of the authorities, are collectible."

In United States v. Bromley, 12 How. 88, 97, the Supreme Court of the United States, in deciding that the income of the Post Office Department is a part of the revenue of the Federal Government, stated as follows:

"Under the act of 1836, the revenue of the Post-Office Department is paid into the treasury. Revenue is the income of a State, and the revenue of the Post-Office Department, being raised by a tax on mailable matter con-

veyed in the mail, and which is disbursed in the public service, is as much a part of the income of the government as moneys collected for duties on imports."

It has been suggested that inasmuch as the profits of the liquor stores do not become part of the general fund, they therefore cannot be considered as revenue of the Commonwealth. This contention is specious and without merit. It entirely overlooks the Act of July 18, 1935, P. L. 1316, which, after appropriating moneys in the State stores fund for the operation of the State liquor stores system, provides:

"Any moneys in the State Stores Fund, from time to time, which may not be required for any of the purposes hereinbefore specified in this act, shall be paid over into the General Fund, and shall be available for the payment of appropriations made from the General Fund."

This act was made retroactive to June 1, 1935, which was prior to the date of the enactment of the Tax Anticipation Notes Act of 1935, supra. On the basis of the former act, the budget for the current biennium contained an estimated item of $10,000,000 to accrue to the general fund from the State liquor stores system and this amount was included among the estimates of revenue against which the appropriations for the current biennium were made from the general fund. The revenue that was estimated to accrue to the general fund from the State liquor stores system was included in the financial statement issued to prospective purchasers of the 1935 issue of tax anticipation notes. This same item of revenue was also included in the financial statement that was presented to the Supreme Court at the time the court was asked to pass upon the constitutionality of the issuance of tax anticipation notes. Accordingly, the Supreme Court of Pennsylvania, in passing upon the validity of the Tax Anticipation Notes Act of 1935, considered this item as part of the Commonwealth's current revenues as did the purchasers of such notes. This is manifest from the court's statement at page 61:

"It must be understood, of course, that the limitation in section 4 has the effect, and the statute recognizes it, of limiting the issue and the payment of the tax anticipation notes to moneys received from the revenues already provided for and to become payable in the biennium. The holders of such notes can receive payment only from current revenue as heretofore decided by this court. Any deficit would be within the prohibition of section 4, unless it came within the $1,000,000 allowance for deficiency": Kelley v. Baldwin, Auditor General, et al., 319 Pa. 53.

The Department of Revenue, pursuant to section 4 of the Act of June 22, 1935, P. L. 442, has allocated the current revenues for the repayment of the principal and interest of the 1935 issue of tax anticipation notes as follows:

| | | | |
|---|---|---|---|
| June 30, 1936 | $3,000,000 | December 31 | $3,000,000 |
| July 31 | 3,000,000 | January 31, 1937 | 2,000,000 |
| August 31 | 3,000,000 | February 28 | 2,000,000 |
| September 30 | 3,000,000 | March 31 | 5,000,000 |
| October 31 | 3,000,000 | April 30 | 15,000,000 |
| November 30 | 3,000,000 | May 31 | 5,000,000 |

In Payment of Tax Anticipation Notes, supra, we pointed out:

"All of the current revenues having been thus unconditionally made available for the repayment of the notes, and the Department of Revenue having exercised the authority given to it by directing the specific setting aside of sufficient of the revenues for that purpose, obviously the pledge and repayment provided for by the legislature can only be made effective by considering the allocations absolutely payable in the manner, at the times, and in the amounts specified, ahead of all other claims payable out of the general fund."

In view of the foregoing, you are advised that liquor store profits either as originally estimated or in excess thereof, being current revenues of the Commonwealth, have been pledged by the legislature by the Act of June 22, 1935, P. L. 442, for the payment of principal and interest of the tax anticipation notes issued under that act

until the sinking fund requirements of such issue are met in full.

If the legislature should attempt to violate the pledge of current revenues as aforesaid, it is likely that note-holders would institute appropriate action for the protection of their rights, and such action might result in a holding up of all expenditures of State revenues.

From Frederic Ray, Harrisburg.